ORVILLE WILLIAMS, APPELLANT, v. AL DOBBERSTEIN, DOING BUSINESS AS DOBBERSTEIN ROOFING COMPANY, ET AL., APPELLEES.

157 N. W. 2d 776

Filed March 29, 1968. No. 36809.

Dier & Ross, for appellant.

H. L. Blackledge, for appellees.

Heard before WHITE, C. J., CARTER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This is a workmen's compensation case. The one judge compensation court entered judgment for the plaintiff. On appeal, the district court reversed and entered judgment for defendants on the ground that the action was not commenced within 1 year from the date of the accident. The plaintiff has appealed.

On September 4, 1965, plaintiff was operating a swing boom which was used to haul gravel up to the roof where he was working. The boom was an A-shaped steel boom, approximately 6 or 7 feet tall. While the plaintiff was operating the boom, it tipped over pinning him between the boom and the wheelbarrow in which the gravel was to be dumped. The other employees removed the boom from the plaintiff and he rested about an hour and then returned to his work. Plaintiff reported the accident to his employer the same day, but continued to work as usual the remainder of that day and each working day thereafter until December 11, 1965. He did not go to any doctor until that date when he went to see his own physician, Dr. Peck. Plaintiff testified that during the period from September 4 to December 11, 1965, the pain kept getting worse and that because of the pain he couldn't lift things as he had before, and that he "just figured it was soreness and it would eventually work out." Dr. Peck put the plaintiff in the hospital in traction from December 15 to 20, 1965. Thereafter, Dr. Peck referred him to Dr. Gogela, a neurologist. The plaintiff thereafter went to a chiropractor in Holdrege for treatment. On February 21, 1966, the defendant compensation insurance carrier arranged to have plaintiff examined for evaluation by Dr. Yost. Dr. Yost's report of March 8, 1966, stated: "He could, from his symptoms and signs, have a centrally protruding disc. The symptoms and signs could all be

from just a lumbo-sacral instability, however." Dr. Yost concluded that he did not feel that the plaintiff's symptoms "have stabilized so that a definitive disability evaluation can be made." Plaintiff returned to work for his employer on June 5, 1966, and worked until the latter part of December 1966. During November 1966, the plaintiff went to Dr. House, an orthopedic surgeon in Grand Island, who had a myelogram taken and determined that plaintiff had an intervertebral disc protrusion. The plaintiff filed his petition in the Workmen's Compensation Court on December 1, 1966. He was operated on in January 1967, and returned to work for his employer once more on June 14, 1967, doing the same type of work he had done prior to the accident. His permanent partial disability was determined to be 12 percent of the body as a whole.

The sole issue presented is whether or not the action was barred by the 1-year statute of limitations, section 48-137, R. S. Supp., 1965. The district court concluded that the plaintiff had failed to prove that his injury was latent and progressive, and that he knew of the injury and that it was progressing from the date of the injury on September 4, 1965.

It is the defendants' position that since the plaintiff knew that he had an accident, and had pain which he associated with the accident; therefore the injury cannot be latent or progressive, and the statute of limitations began to run on the date of the accident. We cannot agree on either count.

As early as Clary v. R. S. Proudfit Co. (1933), 124 Neb. 582, 247 N. W. 417, this court said that "a latent accidental injury, seeming at first to be trifling and noncompensatory, but subsequently resulting in a progressive disease and a disability, occurs when its true nature is discovered by him or when the diseased condition culminates in disability."

It is unreasonable to conclude that an injury is not latent merely because the plaintiff suffered pain, when

thereafter several physicians were unable to correctly diagnose his injury. In Welke v. City of Ainsworth, 179 Neb. 496, 138 N. W. 2d 808, we reaffirmed the rule of Astuto v. Ray Gould Co., 123 Neb. 138, 242 N. W. 375: "If an employee suffers an injury, which appears to be slight, but which is progressive in its course, and which several physicians were unable to correctly diagnose, his failure to file claim, or bring suit within the time limited by law, will not defeat his right to recovery, if he gave notice and commenced action within the statutory period after he had knowledge that compensable disability resulted from the original accident." See, also, Ohnmacht v. Peter Kiewit Sons Co., 178 Neb. 741, 135 N. W. 2d 237.

Pain alone is not compensable under our statute, and disability is the basic factor which gives rise to a claim for compensation. Here the plaintiff did not lose any work nor see any doctor until December 1965. Until that date, he had missed no work nor incurred any medical expenses and had nothing for which to make a claim. An overall analysis of the act points directly to the conclusion that the statutory limitation was not intended to commence until there was a claim on which it could run. This conclusion is directly reflected in many opinions of this court even prior to 1963. In 1963, the Legislature affirmed such an interpretation by changing the definition of the word "accident." Prior to that time, section 48-151, R. R. S. 1943, read in part: "Throughout this act, the following words and phrases as used therein shall be considered to have the following meaning, respectively, unless the context shall clearly indicate a different meaning in the construction used: * * * (2) The word accident as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen *event* happening suddenly and violently * * *." (Italics supplied.)

In 1963, subsection (2) was changed to read: "(2)

The word accident as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen *injury* happening suddenly and violently * * *." (Italics supplied.)

Under this definition, the period of limitation provided in section 48-137, R. S. Supp., 1965, runs from the date of the injury. There is almost complete judicial agreement that under a statute of limitations dating the claim period from the injury, the period runs from the time compensable injury becomes apparent. See 2 Larson, Workmens Compensation Law, § 78.42 (a), p. 263.

We hold that under the Nebraska Workmen's Compensation Act, the period of limitation provided in section 48-137, R. S. Supp., 1965, runs from the time it is reasonably apparent that a compensable injury has been sustained, if the employee is aware that the disability is due to his employment. In this case, no compensable claim or disability arose prior to December 11, 1965, and the action was commenced in less than 1 year thereafter.

The judgment of the district court is reversed and the cause remanded with directions to enter judgment for the plaintiff in accordance with the award of the Workmen's Compensation Court of June 13, 1967.

REVERSED AND REMANDED WITH DIRECTIONS.

SPENCER, J., participating on briefs.