765 N.W.2d 170 (2009)
277 Neb. 679
James E. RISOR, Appellee,
v.
NEBRASKA BOILER, Appellant.
No. S-08-726.
Supreme Court of Nebraska.
May 1, 2009.
*177 Paul Prentiss and Bill Lamson, of Timmermier, Gross & Prentiss, and John Burns, of Burns Law Firm, Omaha, for appellant.
Martin V. Linscott, of Linscott Law Office, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

I. SUMMARY
Nebraska Boiler appeals from a review panel's decision of the Workers' Compensation Court. The review panel affirmed the trial judge's order that the appellee, James E. Risor, sustained an accidenta noise-induced hearing loss. It reversed, however, that part of the trial judge's order that determined compensation began on Risor's retirement date. The review panel concluded that the appropriate date for commencing payments was the first date that Risor discontinued work for treatment, instead of the date that he retired and stopped working altogether.
This appeal presents several interrelated questions:
1. Is Risor's noise-induced hearing loss an accident caused by repetitive trauma or an occupational disease caused by a condition of employment?
2. What is the injury date for a noise-induced hearing loss and is that date the same as the date disability begins for calculating compensation?
3. Is Nebraska Boiler entitled to a credit for wages paid to Risor, who continued to work after sustaining a scheduled disability?
4. Did the Workers' Compensation Court correctly find that Nebraska Boiler had knowledge of Risor's injury because it had accommodated his hearing loss, which knowledge excused the written notice requirement for claimants?
5. If Nebraska Boiler had sufficient information to warrant further investigation of Risor's potentially compensable injury but failed to file an injury report, was the statute of limitations tolled for Risor's claim?

II. BACKGROUND
Risor began working for Nebraska Boiler in 1973 and did many different jobs in the plant during his 31 years of employment. In manufacturing boilers, Nebraska Boiler's plant generates significant noise levels. In 1988, concerned about his hearing loss, Risor saw a physician at the veterans medical center in Omaha, Nebraska. The records from that examination showed that he had a profound bilateral hearing loss. The records, however, do not mention his work environment as a possible cause of his hearing loss. In June 1993, Risor completed a "Company Care Hearing Questionnaire." By checking affirmative responses, he reported that his hearing was poor and that his hearing had been tested. He double-checked in the space indicating his affirmative response that he had a noisy job. On October 19, Nebraska Boiler referred Risor to a physician for a hearing loss evaluation. The physician wrote a report to Nebraska Boiler's nurse, detailing Risor's severe to profound sensorineural, bilateral hearing loss. The report also stated that Risor had seen two other physicians within the last 10 years.
Risor missed worktime to attend the October 1993 office visit, which was the first time that Risor had missed work because *178 of his hearing loss. Later, Nebraska Boiler evaluated Risor's hearing loss in 1999, 2000, 2002, and 2003.
In January 2004, Risor filed a petition seeking workers' compensation benefits for multiple injuries. Besides his hearing loss, Risor alleged injuries of degenerative arthritis of his shoulders, neck, and knee; carpal tunnel syndrome; and a trigger thumb. On February 12, he retired. Nebraska Boiler filed its first injury report regarding Risor's hearing loss on February 17.
Risor alleged that Nebraska Boiler had notice and knowledge of the accident, which occurred on or about June 25, 2002. Nebraska Boiler answered that Risor had failed to give notice of the injury as soon as practical and that his claim was barred as untimely. In July 2005, another physician reported that Risor had a 100-percent impairment for both ears and that his employment at Nebraska Boiler was a definitive contributor.
At trial in November 2005, the parties first explained their positions to the trial judge. Risor's attorney could not explain the complaint's date of injuryJune 25, 2002except that it was hard to pinpoint the exact date in repetitive trauma cases. The record shows that Risor's trial attorney was not the attorney who filed Risor's complaint. The record also shows that June 25 was one of the dates on which Nebraska Boiler evaluated Risor's hearing. But Risor's counsel argued that Risor's October 1993 examination was possibly a sufficient interruption in employment to constitute a date of injury and that he would present evidence of the events on that date. So, before trial began, Nebraska Boiler knew that Risor was contending that the examination in October 1993 possibly established a date of injury for his hearing loss.
Risor testified that he began noticing in the mid-1980's that he had hearing problems. He thought it was work related because the noise in the plant was so bad. He stated that everyone in the shop knew about his hearing loss and accommodated him. Although his hearing loss interfered with his work, he could lipread for simple instructions and his supervisor would write him notes. His supervisor stated that Risor's hearing problems did not interfere with his ability to perform his duties.
Risor initially stated that he had not missed any work in 1993 when Nebraska Boiler referred him to a physician for a hearing examination, because he went during his lunch break. On cross-examination, however, he stated that he only had half-hour lunch breaks and that the physician's office was 10 to 15 minutes away from the plant. He said that he had probably missed some work that day but that he believed Nebraska Boiler would have reimbursed him for the missed time.
Regarding his other injuries, Risor testified that some of them had started when he was injured after falling from a scaffolding in 1983. He stated that he had continued working at Nebraska Boiler because he could not get another job with his hearing loss and other physical ailments.

1. TRIAL JUDGE'S AWARD
In April 2006, the trial judge entered an award for total and permanent disability, finding that Risor had a 100-percent hearing loss. He determined that the accident date was October 19, 1993, when Risor missed work for the referred office visit. And he calculated Risor's benefits based on his average weekly earnings in 1993. But he ordered the payments for total permanent disability to commence on February 12, 2004, when Risor retired.
The trial judge rejected Nebraska Boiler's argument that it did not have notice of Risor's injury as required by Neb.Rev. *179 Stat. § 48-133 (Reissue 2004). The judge reasoned that Risor's supervisors had accommodated his hearing loss even before 1988. He also rejected Nebraska Boiler's argument that under Neb.Rev.Stat. § 48-137 (Reissue 2004), Risor's claim was time barred. He concluded that an exception to the limitation period applied because Nebraska Boiler had not filed an injury report until 2004.[1]

2. NEBRASKA BOILER ATTEMPTS TO OBTAIN A NEW TRIAL SO FORMER CARRIER CAN PARTICIPATE
Two attorneys from two different workers' compensation insurers represented Nebraska Boiler for the coverage period from September 1, 1992, to the time of trial. But because the first carrier had misinformed Nebraska Boiler that it was the carrier in 1992, the company's actual carrier for 1992 did not represent Nebraska Boiler at trial. In May 2006, Nebraska Boiler attempted to obtain a new trial so the excluded carrier, Twin City Fire Insurance Company (Twin City), could participate. The trial judge overruled the motion.
Both parties appealed to the review panel. Twin City attempted to intervene so it could request a new trial. The review panel denied intervention. But it stayed adjudication of the parties' appeals while Twin City appealed its denial of intervention. In Risor v. Nebraska Boiler (Risor I),[2] we affirmed.

3. REVIEW PANEL REVERSES STARTING DATE FOR COMPENSATION
In May 2008, after this court issued its mandate, the review panel issued a decision affirming in part and in part reversing the trial judge's award. In his original appeal to the review panel, Risor had assigned only one errorthe trial judge's finding on the injury date. The review panel concluded that the trial judge erred in concluding that total disability benefits were payable to Risor commencing February 12, 2004, when he retired. The panel stated that under Neb.Rev.Stat. § 48-121(3) (Reissue 2004), total loss of hearing in both ears constituted total and permanent disability. Citing Hobza v. Seedorff Masonry, Inc.,[3] the review panel modified the award to provide that permanent total indemnity was payable from and after the date of injuryOctober 19, 1993. Remember, this date was the first time Risor visited the company's physician.

4. REVIEW PANEL AFFIRMS DETERMINATION OF ACCIDENT
In its cross-appeal to the review panel, Nebraska Boiler assigned that the trial judge erred in determining that Risor's hearing loss was caused by an accident instead of an occupational disease. The review panel recognized that a split of authority existed on the hearing loss issue, but it concluded that the trial judge did not err in evaluating Risor's hearing loss as an accident. Citing Dawes v. Wittrock Sandblasting & Painting,[4] it stated that compensation for repetitive trauma injuries should be tested under the statutory definition of an accident. It also noted that the statutory definition of an occupational disease requires a disease to be *180 "`peculiar to a particular trade.'"[5] It concluded that applying this requirement "is difficult because a wide variety of trades expose workers to repetitive high noise levels."

5. REVIEW PANEL AFFIRMS DATE OF INJURY
The review panel determined that the trial judge was not clearly wrong in finding that the injury date was October 19, 1993. It held that October 19 was the date when the injury first caused Risor to interrupt or discontinue work. The panel reasoned that although Risor could physically perform his work after 1993, his supervisors and coworkers had accommodated his hearing loss through writing notes, using hand signals, and mouthing words for Risor to lipread.

6. REVIEW PANEL AFFIRMS DETERMINATION THAT NEBRASKA BOILER HAD NOTICE OF RISOR'S HEARING LOSS
The panel agreed with the trial judge that Nebraska Boiler had notice of a potentially compensable claim, which should have caused it to investigate further. It noted three relevant facts: (1) The employer had taken precautions to prevent the noise level at its workplace from causing hearing loss; (2) its nurse had referred Risor to a hearing specialist in 1993; and (3) it knew the results of his evaluation.

7. REVIEW PANEL AFFIRMS DETERMINATION THAT RISOR'S CLAIM WAS NOT TIME BARRED
The review panel rejected Nebraska Boiler's argument that the exception under § 48-144.04 to the time limit for filing a claim did not apply because Risor had notified the company of his claim shortly before his retirement. It concluded that notice or knowledge under § 48-144.04 was satisfied by the same notice or knowledge that satisfies § 48-133.

III. ASSIGNMENTS OF ERROR
Nebraska Boiler assigns that the review panel erred in these determinations: (1) Risor's hearing loss fell within the statutory definition of an accident instead of an occupational disease; (2) the date of Risor's accident was October 19, 1993; (3) Risor gave timely notice of his injury; (4) Risor's claim was not barred by the statute of limitations; (5) the company's compensation payments for total permanent disability commenced on October 19, 1993, with no credit for wages paid to Risor until retirement; and (6) Twin City could not intervene postjudgment as a party of interest.

IV. STANDARD OF REVIEW
[1-3] When reviewing a compensation award under Neb.Rev.Stat. § 48-185 (Reissue 2004), we may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without power or exceeded its powers; (2) the judgment, order, or award was procured by fraud; (3) the record lacks sufficient competent evidence to warrant the making of the order, judgment, or award; or (4) the compensation court's factual findings do not support the order or award.[6] And on appellate review of a workers' compensation award, the trial judge's factual findings have the effect of a jury verdict and will not be disturbed unless clearly wrong.[7] Statutory interpretation, however, presents a question of law, *181 and we independently decide questions of law.[8]

V. ANALYSIS

1. NOISE-INDUCED HEARING LOSS IS A REPETITIVE TRAUMA INJURY
[4] Nebraska Boiler first contends that the review panel should have analyzed hearing loss under the statutory definition of an occupational disease. Under Nebraska's workers' compensation statutes, the law compensates a worker only for injuries resulting from an accident or occupational disease.[9] Nebraska Boiler wishes to characterize Risor's injury as an occupational disease because it argues that under that framework, Risor did not become disabled until February 12, 2004, his retirement date. Obviously, this later date would reduce Risor's award. It contends that Risor's hearing loss was an occupational disease because the unusually noisy environment of its plant was unique to this trade and even to its plant.
Section 48-151(3) defines occupation disease. It means "only a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process, or employment and excludes all ordinary diseases of life to which the general public is exposed." Nebraska Boiler relies on two 1960 cases dealing with workers' claims of occupational disease injuries.
In Riggs v. Gooch Milling & Elevator Co.,[10] the plaintiff's employment exposed him to unusual amounts of wheat dust, which exposure was peculiar to and characteristic of grain elevator operations. The medical evidence sufficiently supported his claim that his long period of exposure caused his emphysema and secondary conditions. In the other case, Ritter v. Hawkeye-Security Ins. Co.,[11] the employee, a dishwasher, developed contact dermatitis because of his exposure to detergents and cleansing chemicals. The use of these chemicals was characteristic of and peculiar to the occupation of dishwashing, which involved a hazard which was greater than the risks in employment generally.[12] We have also dealt with other exposures to workplace substances that resulted in occupational diseases, including exposure to latex,[13] silica,[14] and asbestos particles.[15]
[5] But in contrast to substance exposure cases, we have declined to analyze repetitive trauma cases as occupational diseases.[16] We have recognized on several occasions that repetitive trauma cases have characteristics of both an accident and an occupational disease. Yet we have consistently held that the compensability of a condition resulting from the cumulative effects of work-related trauma should be tested under the statutory definition of *182 accident.[17]
Nebraska Boiler argues that occupational hearing loss is distinguishable from repetitive trauma injuries. It contends that unlike repetitive trauma injuries, an occupational disease does not involve an employee's job duties or physical actions. As examples, it cites repetitive trauma injuries resulting from "continuous heavy lifting or repetitive use of power tools."[18] It is true that repetitive trauma injuries usually involve employees' own physical movements in performing their duties. But as Nebraska Boiler's examples illustrate, the trauma on the employee's body is often inseparable from the external objects that the employee must operate, lift, or otherwise manipulate to perform his or her job. Thus, repetitive trauma injuries frequently also involve an external source of physical stress.
Moreover, under the workers' compensation statutes, "injury," meaning injury caused by accident or occupational disease, is defined as "violence to the physical structure of the body."[19] This definition is obviously broad enough to include external sources of trauma to the body, such as loud noise, that are unrelated to the employee's physical movements. For example, we have upheld a disability award for a highway maintenance worker's snow blindness after he plowed snow for 12 hours. His "condition of disability came about, either directly or indirectly, as a result of exposure to the sun's rays" as reflected off the snow.[20]
Similarly, many courts have assumed or specifically held that noise-induced hearing loss is an accident.[21] Some of these courts have explicitly reasoned that extremely loud noises produce an external traumatic force on the ears, which is traceable to the resulting hearing loss.[22]
[6] Additionally, we do not believe that noise exposure is a condition of employment peculiar to Risor's employment.[23] Under the definition of occupational disease, "the unique condition of the employment must result in a hazard which distinguishes it in character from employment generally."[24] We agree with the review panel that the range of workers exposed to *183 loud noises is too broad to satisfy this requirement. Many workers' environments exposed them to sounds capable of producing hearing loss. To name but a few, these workers include firefighters,[25] police officers,[26] construction workers,[27] railroad workers,[28] road workers,[29] airport workers,[30] mechanics,[31] machinists,[32] miners,[33] and factory workers.[34] So we conclude that Risor's exposure to loud noises did not create a hazard that distinguished it in character from a myriad of other occupations.[35]
[7] Finally, in its reply brief, Nebraska Boiler argues that hearing loss cannot satisfy the statutory definition of an accident. It contends that sustaining a hearing loss was not "an unexpected or unforeseen injury" at its plant.[36] The "unexpected or unforeseen" element of the definition is satisfied if the cause was of an accidental character or the effect was unexpected or unforeseen.[37] Nebraska Boiler points out that it required its employees to wear hearing protection because the noise was a danger to their health. So it argues that Risor's hearing loss was not unexpected or unforeseen.
Nebraska Boiler's argument gets lost in a legal cul-de-sac. It argues that the hearing loss danger was obvious to any employee because of the noise level, so it could not be unexpected or unforeseen. Conversely, it denies knowing that Risor's hearing loss could have resulted from the noise level in its plant. We conclude that Nebraska Boiler's employees were entitled to rely on the hearing protection that the company provided them to protect them from injury. Risor testified that wearing hearing protection was always mandatory and that he always complied with this rule at work.
We recognize that some courts have analyzed loud noises as a condition of employment leading to an occupational disease.[38] And some states have statutes setting out standards and rules for occupational hearing loss claims.[39] Among these statutes, some specifically classify *184 noise-induced hearing loss as an occupational disease.[40]
One reason these states enacted separate statutes dealing with hearing loss was to protect workers' compensation insurers from the unexpected rising tide of industrial-related hearing impairments beginning in the late 1940's.[41] Allowing hearing loss benefits as a scheduled disability, without requiring loss of wages, troubled some states. These states were concerned that claimants could potentially receive disability benefits while continuing to work.[42] Thus, some states now require a period of separation from the noise before a claim is compensable.[43] Yet, some of these statutes do more than protect the workers' compensation insurer from claims that possibly involve extended indemnity. They also preserve the employee's claim by providing that the statute of limitations does not commence until the end of employment or the separation period.[44] Other statutes provide that the statute of limitations does not commence until the date of disability[45] or until the date of the last trauma or hazardous exposure.[46]
Obviously, occupational hearing loss raises unique issues regarding accrual dates and limitation periods. As noted, Nebraska Boiler wishes to characterize Risor's injury as an occupational disease. Under an occupational disease framework, it argues that Risor's hearing loss did not disable him until he sustained a labor market access loss. It further argues that because Risor continued to receive wages, he did not sustain a labor market access loss until he retired in February 2004.
[8, 9] We recognize that a labor market access loss is the test of disability in occupational disease cases, at least when the disease results in a whole body injury.[47] In accident cases involving whole body impairment, we also test a claim of disability for a loss of employability and earning capacity rather than a loss of bodily function.[48] But these rules do not apply when accidents or occupational diseases result in scheduled disabilities, which include hearing loss.[49]
[10, 11] For scheduled disabilities under § 48-121(3), a worker is compensated *185 for his or her loss of use of a body member; loss of earning power is immaterial in determining compensation under § 48-121(3).[50] And despite the obvious potential for extended indemnity periods in gradual injury cases, the Nebraska Legislature has not enacted separate accrual dates or limitation periods for these types of claims. So insurers' indemnity concerns cannot be the basis of our decision. The Legislature intended the Nebraska Workers' Compensation Act to provide benefits for employees injured on the job.[51] Applying the act consistently with that legislative goal is our only concern here.
[12] We are persuaded by the reasoning of those courts holding that noise-induced hearing loss is caused by repetitive external trauma produced in the work environment. We also believe that an occupational disease classification is inappropriate under our case law. Occupational hearing loss does not result from exposure to a workplace substance. And noise exposure is too common to be considered a condition peculiar to Risor's occupation or Nebraska Boiler's industry. We conclude that a worker's noise-induced hearing loss is a condition resulting from the cumulative effects of work-related trauma, so we test Risor's claim under the statutory definition of accident.

2. DATE OF INJURY FOR REPETITIVE TRAUMA INJURIES
Nebraska Boiler contends that even if Risor's hearing was an accident under the workers' compensation statute, the review panel erred in affirming the trial judge's finding that the date of injury was October 19, 1993.
[13] The Nebraska Workers' Compensation Act defines an accident as "an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury."[52] Under § 48-151(2), an injured worker must satisfy three elements to prove an injury is the result of an accident: (1) The injury must be unexpected or unforeseen, (2) the accident must happen suddenly and violently, and (3) the accident must produce at the time objective symptoms of injury.[53]
We have already addressed Nebraska Boiler's argument regarding an unexpected or unforeseen injury, and it does not argue that Risor failed to show objective symptoms of injury. Therefore, we focus on the second element.
[14, 15] Under § 48-151(2), "suddenly and violently" does not mean instantaneously and with force; instead, the element is satisfied if the injury occurs at an identifiable point in time, requiring the employee to discontinue employment and seek medical treatment.[54] The time of an accident is sufficiently definite if either the cause is reasonably limited in time or the result materializes at an identifiable point.[55]
*186 [16, 17] An employee establishes an identifiable point in time when a repetitive trauma injury occurs if the employee stops work and seeks medical treatment.[56] The law does not establish a minimum time that an employee must discontinue work for medical treatment to be eligible for benefits.[57] The length of time is not the controlling factor.[58]
Nebraska Boiler does not dispute these rules. Instead, it contends that Risor failed to produce "substantial evidence" that he missed work on October 19, 1993, to seek medical treatment.[59] It contends that he contradicted himself on whether he had missed work. Alternatively, it argues that Risor's injury occurred sometime in the 1980's, when Nebraska Boiler accommodated him at work for his hearing loss or when he first had his hearing tested in 1988. Finally, it argues that the 1993 date could not be the date of injury because Risor failed to plead this date in his complaint as a possible date of injury.

(a) Evidence Sufficiently Supports Date of Injury
[18, 19] The date of an accident resulting in a compensable injury presents a question of fact, which the trial judge resolves.[60] To recover under the Nebraska Workers' Compensation Act, a claimant must prove by a preponderance of the evidence that an accident or occupational disease arising out of and occurring in the course of employment proximately caused an injury which resulted in disability compensable under the act.[61]
[20-22] When testing the trial judge's findings of fact, we consider the evidence in the light most favorable to the successful party. We give the successful party the benefit of every inference reasonably deducible from the evidence.[62] As the trier of fact, the trial judge determines the credibility of the witnesses and the weight to give their testimony.[63] And when a witness makes contradictory statements, the resolution of that contradiction presents a question of fact.[64]
[23] We recognize that Risor initially stated that he had not missed work to attend the 1993 referred medical examination. Yet, in context with Risor's other statements, the trial judge could have reasonably concluded that Risor meant he had not lost wages over the appointment. And Risor's testimony on cross-examination showed that he could not have attended the appointment in the half-hour time that Nebraska Boiler allotted him for his lunch break. The trial judge was not clearly wrong in this factual finding.

(b) Risor's 1988 Hearing Examination Was Not the Date of Injury
[24] Nebraska Boiler argues that the trial judge should not have treated Risor's 1988 hearing test any differently than his 1993 test because both tests showed profound hearing loss. The evidence, however, *187 fails to show that Risor had missed work for his hearing examination in 1988. Remember, an employee's claim for injury resulting from an accident is not compensable until the employee discontinues work, even if for a brief time, and seeks medical treatment.[65]

(c) Minor Accommodations Are Not a Job Change
[25, 26] Relying on Owen v. American Hydraulics,[66] Nebraska Boiler argues that its attempts to accommodate Risor's hearing loss in the 1980's effected a discontinuance of employment sufficient to prove Risor's accident occurred much earlier. It implicitly argues that his claim is therefore time barred. In Owen, we implicitly recognized that a job transfer can constitute a discontinuance of work that establishes the date of injury. We affirmed the trial judge's finding that the claimant's injury occurred when he was transferred to another position requiring less strenuous activity after he was no longer able to perform his duties. Here, however, Nebraska Boiler did not attempt to transfer Risor to a position away from the plant's noise.

(d) The Incorrect Date in Risor's Complaint Did Not Prejudice Nebraska Boiler
[27] Nebraska Boiler contends that the trial judge was clearly wrong in finding that October 19, 1993, was the date of injury because he did not plead it. It argues that it could not have anticipated this date when Risor never stopped working until his retirement. It further argues that if it had known this date was in play, it would have conducted further investigation and developed additional facts regarding events in 1993.
The record, however, shows that Nebraska Boiler knew from its own records that October 19, 1993, was a possible date of injury. It had referred Risor to the 1993 hearing examination after Risor had completed a questionnaire in which he responded that he had hearing loss and a noisy job. In addition, Risor's attorney had stated before beginning the trial that he intended to present evidence to show that October 19, 1993, was a possible date of injury. Nebraska Boiler did not request a continuance or object that the evidence was outside the pleadings. It clearly questioned Risor about this appointment and presented evidence regarding the issue.
[28] Under Neb.Rev.Stat. § 48-168 (Cum.Supp.2008), the Nebraska Workers' Compensation Court is not bound by formal rules of procedure. And even our formal pleading rules do not preclude an implicit amendment of pleadings to conform to the evidence when the parties try the issues by consent.[67] We conclude that Nebraska Boiler was sufficiently advised of the issue it was required to defend against and that it did defend against the 1993 date.[68]
The review panel did not err in affirming the trial judge's finding that Risor's date of injury was October 19, 1993.

3. WORKERS' COMPENSATION STATUTES DO NOT REQUIRE A CLAIMANT'S AWARD FOR A SCHEDULED DISABILITY TO BE REDUCED BY SUBSEQUENTLY EARNED WAGES
[29] Nebraska Boiler argues that even if October 19, 1993, was Risor's date of *188 injury, the trial judge should have credited it for the wages he continued to earn until his retirement. It does not argue that Risor's award for a scheduled disability constitutes an impermissible double recovery.[69] Instead, it argues that requiring it to pay permanent total disability benefits while Risor was working and receiving wages is grossly unfair. It notes that a 1999 amendment to Neb.Rev.Stat. § 48-119 (Reissue 2004) now requires compensation to be paid from "`the date disability began,'" rather than "the date of injury."[70] And it argues that "disability" means the point when an injury results in loss of earning power, so that Risor was not entitled to benefits until he retired. Thus, it argues that the review panel incorrectly relied on Hobza v. Seedorff Masonry, Inc.[71] In Hobza, we concluded that compensation benefits were payable from the date of injury under the pre-1999 version of the statute. Nebraska Boiler argues that Hobza is no longer controlling.
At the outset, we note that the statutes do not define "disability." It is true that the Legislature amended § 48-119 in 1999. But that amendment is consistent with our decisions implicitly or explicitly equating "date of injury" with the date a disability begins.
[30-32] A worker has not suffered a compensable injury until disability begins.[72] And, as noted, except for scheduled disabilities, "disability is defined in terms of employability and earning capacity rather than in terms of loss of bodily function."[73] In gradual injury cases, the date of injury serves to mark the point in time when the injury rises to the level of disability.[74] But Nebraska Boiler's argument that Risor did not suffer a loss of wages is immaterial to determining compensation for scheduled disabilities under § 48-121(3).
[33-35] The Legislature clearly intended to fix benefits for loss of specific body members under subsection (3) without regard to the worker's ability to continue working in a particular occupation or industry.[75] In other words, a worker's diminished earning power is conclusively presumed for injuries resulting in scheduled disabilities.[76] A worker is entitled to compensation for a scheduled disability even if he or she continues to work.[77] Conversely, a worker is not entitled to an award for loss of earning power when the injury is limited to specific body members, unless some unusual or extraordinary condition as to other members or parts of the body develops as the result of injury.[78]
[36] Nebraska Boiler points to no statute that gives an employer a credit for wages paid to a worker who has suffered a *189 scheduled disability but continues to work. Nor is that argument consistent with our case law. Thus, we conclude that for scheduled disabilities caused by repetitive trauma, the date disability begins is the same as the date of injury for whole body impairments caused by repetitive trauma. That date is when the employee discontinues work and seeks medical treatment, despite being paid wages while he continued to work. The review panel did not err in concluding that Risor was entitled to compensation for his scheduled disability from October 19, 1993, despite being paid wages while he continued to work.

4. NEBRASKA BOILER HAD KNOWLEDGE OF RISOR'S INJURY
[37] Nebraska Boiler contends that the review panel erred in determining that Risor gave timely notice of his injury under § 48-133. Under that section, a claimant cannot maintain an action for compensation unless he or she has given the employer written notice of the injury "as soon as practicable." But § 48-133 also contains an exception to the written notice requirement: "Want of such written notice shall not be a bar to proceedings under the Nebraska Workers' Compensation Act, if it be shown that the employer had notice or knowledge of the injury." The review panel affirmed the trial judge's factual finding that Nebraska Boiler had notice or knew of Risor's hearing loss starting in the 1980's when it accommodated his hearing loss. Nebraska Boiler argues that this conclusion was wrong because Risor did not provide notice that his hearing loss was work related until 2004.
[38-42] Under § 48-133, an employer's notice or knowledge of a worker's injury is sufficient if a reasonable person would conclude that the injury is potentially compensable and that the employer should therefore investigate the matter further.[79] When an employer's foreman, supervisor, or superintendent has knowledge of the employee's injury, that knowledge is imputed to the employer. Knowledge imputed to an employer can satisfy § 48-133's notice requirement.[80] And an employee is not required to give an opinion as to the cause of an injury in order to satisfy the notice requirement of § 48-133.[81] Finally, the parties do not dispute the facts concerning reporting and notice or when Nebraska Boiler accommodated Risor's hearing loss. Thus, whether such facts constitute sufficient notice to the employer under § 48-133 presents a question of law.[82]
In resolving this question of law, we note that the review panel concluded that Nebraska Boiler had notice of a potentially compensable claim, which should have caused it to investigate further. The review panel noted three relevant facts: (1) Nebraska Boiler had taken precautions to prevent the noise level at its workplace from causing hearing loss; (2) its nurse had referred Risor to a hearing specialist in 1993; and (3) it knew the results of Risor's evaluation. The review panel also noted the trial judge's finding that Risor's hearing loss in the 1980's was obvious and that Nebraska Boiler had accommodated it. Nebraska Boiler does not dispute these facts. Thus, the review panel did not err in deciding that Nebraska Boiler had sufficient notice that Risor's hearing loss was potentially work related and compensable.

*190 5. RISOR'S CLAIM WAS NOT BARRED BY THE STATUTE OF LIMITATIONS
[43] The review panel affirmed the trial judge's determination that the exception under § 48-144.04 applied to toll the statute of limitations. Section 48-144.04, in relevant part, provides:
[W]here an employer, workers' compensation insurer, or risk management pool... has knowledge, of any injury or death of an employee and fails, neglects, or refuses to file a report thereof, the limitations in section 48-137 ... shall not begin to run against the claim of the injured employee ... until such report shall have been furnished as required by the compensation court.
[44] The review panel further determined that under both §§ 48-144.04 and 48-133, the same test for knowledge applies. That is, under § 48-144.04, the employer has sufficient knowledge of an employee's injury if a reasonable person would conclude that an employee's injury is potentially compensable and that the employer should therefore investigate the matter further. We agree.
For injuries set forth in § 48-144.01, the employer or workers' compensation insurer must file an injury report with the Nebraska Workers' Compensation Court within 10 days of the employer's notice or knowledge of the injury. It would be inconsistent to conclude that an employer had sufficient knowledge of a compensable injury to excuse the claimant's written notice of injury but insufficient knowledge to trigger the employer's duty to file an injury report under § 48-144.01.
The review panel concluded that Nebraska Boiler had sufficient knowledge of Risor's injury at least by 1993 but that it failed to file an injury report as required under § 48-144.01. But Nebraska Boiler argues that § 48-144.01 could not toll the statute of limitations. It contends that the statute of limitations began to run sometime in the 1980's when Risor knew or should have known that he had a claim. It argues Risor knew he had a hearing loss in the 1980's and thought it was work related. Section 48-137 provides: "In case of personal injury, all claims for compensation shall be forever barred unless, within two years after the accident, the parties shall have agreed upon the compensation ... or ... one of the parties shall have filed a petition...."
Nebraska Boiler implicitly argues that we should apply the same discovery rule[83] to an original claim for benefits that we have applied to a claim to modify an award. We have held that the 2-year time limit under § 48-137 also applies to a proceeding to modify an award under Neb. Rev.Stat. § 48-141 (Reissue 2004). In modification cases, we have held that a worker must commence a proceeding within 2 years of the time that the employee knows, or is chargeable with knowledge, that his or her condition has materially changed and there is a substantial increase in disability.
But as explained earlier, a claim for disability resulting from repetitive trauma accrues when the employee discontinues work and seeks medical treatment. So applying a discovery rule against an employee in a repetitive trauma case could result in the claim's being barred before it accrues.[84] Other courts have noted the rule's punitive effect. "Applying the discovery rule to such an injury often works to the prejudice of an employee who discovers symptoms of a repetitive trauma *191 injury but continues to work."[85] And we have stated that "the statutory limitation was not intended to commence until there was a claim on which it could run."[86]
But we acknowledge that there is a tension in our case law. In some cases involving progressive injuries, we have held that the statute of limitations is tolled unless the employee "`knows that an injury has occurred and that disability therefrom was due to his employment.'"[87] In contrast, in other cases, we have applied a discovery rule that commences the statute of limitations when the employee knew or should have known that an injury was work related.[88] But we need not resolve this tension here.
Even if we concluded that the noise in the plant was such that Risor should have known his hearing loss was work related, the same conclusion would apply to Nebraska Boiler. We agree with the trial judge that it was obvious to Nebraska Boiler that Risor had substantial hearing loss in the 1980's. We could not conclude that Risor should have known or discovered that his injury was work related without also concluding that Nebraska Boiler could have filed an injury report anytime during that period. We conclude that the review panel did not err in determining that § 48-144.01 tolled the statute of limitations from running against Risor's claim.

6. OUR DECISION IN RISOR I IS THE LAW OF THE CASE REGARDING TWIN CITY'S INTERVENTION
[45] Nebraska Boiler argues that the review panel incorrectly determined that this court had addressed its arguments in Risor I regarding Twin City's right to participate in these proceedings.
In Risor I, we held that an employer's insurer is not a necessary party in a workers' compensation action brought solely against the employer and that the workers' compensation statutes did not authorize postjudgment intervention. And we rejected Twin City's due process arguments that it was entitled to notice and representation. We declined, however, to decide whether the incorrect date of injury alleged in Risor's pleading presented a due process problem for Nebraska Boiler. We concluded that whether Nebraska Boiler had been denied due process by the alleged deficiency was a subject for the substantive appeal. We stated that Twin City was free to represent Nebraska Boiler on this issue in the substantive appeal but held that it had failed to present a reason for intervention.
[46] Therefore, the only issue Risor I left open for the substantive appeal was whether the date of injury alleged in Risor's pleading presented a due process violation to Nebraska Boiler. Under the law-of-the-case doctrine, an appellate court's holdings on issues presented to it conclusively settle all matters ruled upon, either expressly or by necessary implication.[89] Nebraska Boiler has not specifically argued it was denied due process. But we have determined that it was not prejudiced by the date of injury pleaded because it had sufficient notice that Risor *192 would seek to prove October 19, 1993, was the date of injury. Thus, the only remaining issue from Risor I is resolved against Nebraska Boiler.

VI. CONCLUSION
We conclude that a noise-induced hearing loss is a repetitive trauma injury. Thus, it is an accident under the Nebraska Workers' Compensation Act. The review panel did not err in affirming the trial judge's finding that the date of injury was October 19, 1993. The date of injury is the date disability begins for scheduled disabilities resulting from gradual trauma. Nebraska Boiler was not entitled to a credit for wages it paid to Risor after the date that he sustained a scheduled disability. The review panel did not err in determining that Nebraska Boiler had sufficient notice that Risor's hearing loss was work related and potentially compensable. And, under these facts, the review panel correctly affirmed the trial judge's determination that § 48-144.04 tolled the statute of limitations. Finally, under the law-of-the-case doctrine, the review panel correctly declined to revisit arguments regarding Twin City's participation in this action.
AFFIRMED.
GERRARD, J., participating on briefs.
NOTES
[1] See Neb.Rev.Stat. §§ 48-144.01 and 48-144.04 (Cum.Supp.2008).
[2] Risor v. Nebraska Boiler, 274 Neb. 906, 744 N.W.2d 693 (2008).
[3] Hobza v. Seedorff Masonry, Inc., 259 Neb. 671, 611 N.W.2d 828 (2000).
[4] Dawes v. Wittrock Sandblasting & Painting, 266 Neb. 526, 667 N.W.2d 167 (2003), disapproved in part on other grounds, Kimminau v. Uribe Refuse Serv., 270 Neb. 682, 707 N.W.2d 229 (2005).
[5] See Neb.Rev.Stat. § 48-151(3) (Reissue 2004).
[6] Lagemann v. Nebraska Methodist Hospital, 277 Neb. 335, 762 N.W.2d 51 (2009).
[7] Id.
[8] Id.
[9] See Neb.Rev.Stat. § 48-101 (Reissue 2004).
[10] Riggs v. Gooch Milling & Elevator Co., 173 Neb. 70, 112 N.W.2d 531 (1961).
[11] Ritter v. Hawkeye-Security Ins. Co., 178 Neb. 792, 135 N.W.2d 470 (1965).
[12] See, also, Hull v. Aetna Ins. Co., 247 Neb. 713, 529 N.W.2d 783 (1995).
[13] Ludwick v. TriWest Healthcare Alliance, 267 Neb. 887, 678 N.W.2d 517 (2004) (per curiam); Morris v. Nebraska Health System, 266 Neb. 285, 664 N.W.2d 436 (2003).
[14] Hauff v. Kimball, 163 Neb. 55, 77 N.W.2d 683 (1956).
[15] Osteen v. A.C. and S., Inc., 209 Neb. 282, 307 N.W.2d 514 (1981).
[16] See, Veatch v. American Tool, 267 Neb. 711, 676 N.W.2d 730 (2004); Dawes, supra note 4.
[17] See, e.g., Veatch, supra note 16; Dawes, supra note 4; Fay v. Dowding, Dowding, 261 Neb. 216, 623 N.W.2d 287 (2001); Jordan v. Morrill County, 258 Neb. 380, 603 N.W.2d 411 (1999). See, also, Swoboda v. Volkman Plumbing, 269 Neb. 20, 690 N.W.2d 166 (2004).
[18] Brief for appellant at 13.
[19] § 48-151(4).
[20] See Hayes v. McMullen, 128 Neb. 432, 434, 259 N.W. 165, 167 (1935).
[21] See, Powers v. City of Fayetteville, 97 Ark. App. 251, 248 S.W.3d 516 (2007); Dorsey v. United Techs./Norden Systems, 47 Conn.App. 810, 707 A.2d 744 (1998); Food Machinery Corp. v. Shook, 425 So.2d 163 (Fla.App.1983); Shipman v. Employers Mutual Liability Ins. Co., 105 Ga.App. 487, 125 S.E.2d 72 (1962); Indiana State Police Dept. v. Carich, 680 N.E.2d 4 (Ind.App.1997); Winkelman v. Boeing Airplane Co., 166 Kan. 503, 203 P.2d 171 (1949); Manalapan Mining Co., Inc. v. Lunsford, 204 S.W.3d 601 (Ky.2006); Romero v. Otis Intern., 343 So.2d 405 (La.App.1977); Cisneros v. Molycorp, Inc., 107 N.M. 788, 765 P.2d 761 (Ct.App.1988); Peabody Galion Corp. v. Workman, 643 P.2d 312 (Okla.1982); Hinkle v. H.J. Heinz Company, 462 Pa. 111, 337 A.2d 907 (1975); Schurlknight v. City of North Charleston, 352 S.C. 175, 574 S.E.2d 194 (2002); Ferrell v. Cigna Property & Cas. Ins. Co., 33 S.W.3d 731 (Tenn.2000).
[22] See, e.g., Food Machinery Corp., supra note 21; Demars v. Rickel Manufacturing Corporation, 223 Kan. 374, 573 P.2d 1036 (1978); Romero, supra note 21; Hinkle. supra note 21.
[23] See § 48-151(3).
[24] Jordan, supra note 17, 258 Neb. at 387, 603 N.W.2d at 417. See Miller v. Goodyear Tire & Rubber Co., 239 Neb. 1014, 480 N.W.2d 162 (1992).
[25] Schurlknight, supra note 21.
[26] City of Scranton v. W.C.A.B. (Roche), 909 A.2d 485 (Pa.Commw.2006).
[27] Romero, supra note 21.
[28] Ashby v. Long Island Rail Road Co., 7 A.D.3d 651, 777 N.Y.S.2d 177 (2004).
[29] Muscatine County v. Morrison, 409 N.W.2d 685 (Iowa 1987).
[30] Shipman, supra note 21.
[31] OCT Equipment, Inc. v. Ferrell, 114 P.3d 479 (Okla.Civ.App.2005).
[32] Elliott Turbomachinery Co. v. W.C.A.B. (Sandy), 898 A.2d 640 (Pa.Commw.2006).
[33] Myers v. State Workmen's Comp. Com'r, 160 W.Va. 766, 239 S.E.2d 124 (1977).
[34] Hinkle, supra note 21.
[35] See Dorsey, supra note 21.
[36] See § 48-151(2).
[37] See Jordan, supra note 17.
[38] See, Van Voorhis v. Workmen's Comp. Appeals Bd., 37 Cal.App.3d 81, 112 Cal.Rptr. 208 (1974); Martinez v. Industrial Commission, 40 Colo.App. 485, 580 P.2d 36 (1978); Alexander v. Harcon, Inc., 133 Idaho 785, 992 P.2d 780 (2000); Michales v. Morton Salt, 450 Mich. 479, 538 N.W.2d 11 (1995); Ahlberg v. SAIF, 199 Or.App. 271, 111 P.3d 778 (2005); Westmoreland Coal Co. v. Campbell, 7 Va.App. 217, 372 S.E.2d 411 (1988); Myers, supra note 33; Lumbermens Mut. Cas. Co. v. Perkins, No. 09-98-131 CV, 2000 WL 84889 (Tex.App. Jan. 27, 2000) (not designated for publication).
[39] See, Ala.Code § 25-5-110 (2007); 820 Ill. Comp. Stat. Ann. § 305/8(e)(16) (LexisNexis Cum.Supp.2008); Iowa Code Ann. §§ 85B.1 to 85B.15 (West 1996 & Cum.Supp.2009); Md.Code Ann., Lab. & Empl. § 9-505 (LexisNexis 2008); Mo. Ann. Stat. §§ 287.067 and 287.197 (West Cum.Supp.2008); N.J. Stat. Ann. §§ 34:15-35:10 to 34:15-35.22 (West 2000); N.Y. Workers' Comp. Law §§ 49-aa to 49-hh (McKinney 2005); N.C. Gen.Stat. § 97-53(13) and (28) (LexisNexis 2007); 77 Pa. Cons.Stat. Ann. § 513(8)(i) (West 2002); R.I. Gen. Laws § 28-33-19(a)(4) (2003); Wis. Stat. Ann. § 102.555 (West 2004).
[40] See, Ala.Code § 25-5-110; 820 Ill. Comp. Stat. Ann. § 305/8(e)(16); N.C. Gen.Stat. § 97-53(28); R.I. Gen. Laws § 28-33-19(a)(4).
[41] See 3 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 52.05 (2008).
[42] See id., citing Fleming v. Industrial Com., 95 Ill.2d 329, 69 Ill.Dec. 384, 447 N.E.2d 819 (1983).
[43] See, e.g., Mo. Ann. Stat. § 287.197(7); N.J. Stat. Ann. § 34:15-35:20; N.Y. Workers' Comp. Law § 49-bb; Wis. Stat. Ann. § 102.555(7).
[44] See, e.g., Iowa Code Ann. § 85B.8; Mo. Ann. Stat. § 287.197(7); N.J. Stat. Ann. § 34:15-35:20; N.Y. Workers' Comp. Law § 49-bb; Wis. Stat. Ann. § 102.555(4).
[45] See, e.g., Ind.Code Ann. § 22-3-7-32 (LexisNexis Cum.Supp.2008); Mo. Ann. Stat. § 287.063 (Cum.Supp.2008).
[46] See, Ark.Code Ann. § 11-9-702(2)(A) (Supp.2007); Okla. Stat. Ann. tit. 85, § 43 (West 2006); 77 Pa. Cons.Stat. Ann. § 513(8)(viii).
[47] See Ludwick, supra note 13.
[48] See id.
[49] See § 48-121(3).
[50] See, Madlock v. Square D Co., 269 Neb. 675, 695 N.W.2d 412 (2005), citing Jeffers v. Pappas Trucking, Inc., 198 Neb. 379, 253 N.W.2d 30 (1977); Rodriguez v. Monfort, Inc., 262 Neb. 800, 635 N.W.2d 439 (2001); Kraft v. Paul Reed Constr. & Supply, 239 Neb. 257, 475 N.W.2d 513 (1991); Sopher v. Nebraska P.P. Dist., 191 Neb. 402, 215 N.W.2d 92 (1974).
[51] Zach v. Nebraska State Patrol, 273 Neb. 1, 727 N.W.2d 206 (2007).
[52] § 48-151(2).
[53] See Swoboda, supra note 17.
[54] See id. (discussing rationales).
[55] See id.
[56] See Vonderschmidt v. Sur-Gro, 262 Neb. 551, 635 N.W.2d 405 (2001).
[57] Id.
[58] Id.
[59] Brief for appellant at 17.
[60] See, Morris, supra note 13; Mendoza v. Pepsi Cola Bottling Co., 8 Neb.App. 778, 603 N.W.2d 156 (1999).
[61] See Stacy v. Great Lakes Agri Mktg., 276 Neb. 236, 753 N.W.2d 785 (2008). See, also, § 48-151(2).
[62] Money v. Tyrrell Flowers, 275 Neb. 602, 748 N.W.2d 49 (2008).
[63] Id.
[64] See, Hawkes v. Lewis, 252 Neb. 178, 560 N.W.2d 844 (1997); Stansbury v. HEP, Inc., 248 Neb. 706, 539 N.W.2d 28 (1995).
[65] See Morris, supra note 13, citing Vonderschmidt, supra note 56.
[66] Owen v. American Hydraulics, 258 Neb. 881, 606 N.W.2d 470 (2000).
[67] See Neb. Ct. R. Pldg. § 6-1115(b).
[68] See Hayes v. A.M. Cohron, Inc., 224 Neb. 579, 400 N.W.2d 244 (1987), disapproved on other grounds, Heiliger v. Walters & Heiliger Electric, Inc., 236 Neb. 459, 461 N.W.2d 565 (1990).
[69] Madlock, supra note 50.
[70] Brief for appellant at 21. See 1999 Neb. Laws, L.B. 216.
[71] See Hobza, supra note 3.
[72] See Ludwick, supra note 13.
[73] Id. at 894, 678 N.W.2d at 523.
[74] See, e.g., Ludwick, supra note 13; Williams v. Dobberstein, 182 Neb. 862, 157 N.W.2d 776 (1968). See, also, 3 Larson & Larson, supra note 41.
[75] Broderson v. Federal Chemical Co., 199 Neb. 278, 258 N.W.2d 137 (1977). See, also, cases cited at note 50.
[76] See 4 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 86.02 (2008).
[77] See id. See, also, Sopher, supra note 50.
[78] See, e.g., Rodriguez, supra note 50; Fenster v. Clark Bros. Sanitation, 235 Neb. 336, 455 N.W.2d 169 (1990).
[79] See Scott v. Pepsi Cola Co., 249 Neb. 60, 541 N.W.2d 49 (1995).
[80] See id.
[81] See id.
[82] See id.
[83] See Frezell v. Iwersen, 231 Neb. 365, 436 N.W.2d 194 (1989).
[84] See, e.g., Miniero v. City of New York, 15 Misc.3d 432, 833 N.Y.S.2d 845 (2007).
[85] Schurlknight, supra note 21, 352 S.C. at 178, 574 S.E.2d at 195.
[86] Williams, supra note 74, 182 Neb. at 865, 157 N.W.2d at 779.
[87] Novak v. Triangle Steel Co., 197 Neb. 783, 786, 251 N.W.2d 158, 160 (1977) (emphasis supplied); See, also, Williams, supra note 73.
[88] Maxey v. Fremont Department of Utilities, 220 Neb. 627, 371 N.W.2d 294 (1985); Ohnmacht v. Peter Kiewit Sons Co., 178 Neb. 741, 135 N.W.2d 237 (1965).
[89] Pennfield Oil Co. v. Winstrom, 276 Neb. 123, 752 N.W.2d 588 (2008).