Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/28/2017 09:13 AM CST

- 282 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

MORTON MOYERS, APPELLEE, V. INTERNATIONAL
PAPER COMPANY AND ONE REPUBLIC
INSURANCE COMPANY, APPELLANTS.

___ N.W.2d ___

Filed November 21, 2017.    No. A-17-008.

1. **Workers' Compensation: Evidence: Appeal and Error.** Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion.

2. **Workers' Compensation: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

3. ____: ____. Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence.

4. **Workers' Compensation: Evidence: Appeal and Error.** When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence.

5. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment.

6. **Final Orders: Appeal and Error.** Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), an appellate court may review three types of final

- 283 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

orders: (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, and (3) an order that affects a substantial right made on summary application in an action after a judgment is rendered.

7. **Workers' Compensation: Appeal and Error.** A party can appeal an order from the Workers' Compensation Court if it affects the party's substantial right.

8. **Final Orders.** Substantial rights under Neb. Rev. Stat. § 25-1902 (Reissue 2016) include those legal rights that a party is entitled to enforce or defend.

9. **Final Orders: Appeal and Error.** A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.

10. ____: ____. When multiple issues are presented to a trial court for simultaneous disposition in the same proceeding and the court decides some of the issues, while reserving other issues for later determination, the court's determination of fewer than all the issues is an interlocutory order and is not a final order for the purpose of an appeal.

11. **Workers' Compensation: Judgments: Final Orders.** A Workers' Compensation Court's finding of a compensable injury or its rejection of an affirmative defense without a determination of benefits is not an order that affects an employer's substantial right in a special proceeding.

12. **Workers' Compensation: Evidence: Appeal and Error.** Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion.

13. **Workers' Compensation: Rules of Evidence: Appeal and Error.** The Workers' Compensation Court is not bound by the usual common-law or statutory rules of evidence; it has discretion to admit evidence, and its decision to admit or exclude evidence will not be reversed on appeal absent an abuse of discretion.

14. **Workers' Compensation: Words and Phrases.** Under the Nebraska Workers' Compensation Act, an occupational disease means only a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process, or employment and excludes all ordinary diseases of life to which the general public is exposed.

15. **Workers' Compensation: Time.** Under the Nebraska Workers' Compensation Act, an injury has occurred as the result of an occupational disease when violence has been done to the physical structure of

- 284 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

the body and a disability has resulted. In other words, an occupational disease has caused an "injury" within the meaning of the act, at the point it has resulted in disability.

16. **Workers' Compensation.** A workers' compensation claimant may recover when an injury, arising out of and in the course of employment, combines with a preexisting condition to produce disability, notwithstanding that in the absence of the preexisting condition no disability would have resulted.

17. ____. As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony.

18. **Workers' Compensation: Appeal and Error.** Where the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the Workers' Compensation Court.

19. **Workers' Compensation.** Whether a plaintiff in a Nebraska workers' compensation case is totally disabled is a question of fact.

20. ____. Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work he or she was trained or accustomed to perform or in any other kind of work which a person of the employee's mentality and attainments could perform.

21. **Workers' Compensation: Expert Witnesses.** Although medical restrictions or impairment ratings are relevant to a claimant's disability, the trial judge is not limited to expert testimony to determine the degree of disability but instead may rely on the testimony of the claimant.

Appeal from the Workers' Compensation Court: Julie A. Martin, Judge. Affirmed.

Timothy E. Clarke and Thomas B. Shires, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellants.

Terry M. Anderson and David M. O'Neill, of Hauptman, O'Brien, Wolf & Lathrop, P.C., for appellee.

Inbody, Pirtle, and Riedmann, Judges.

Pirtle, Judge.

## I. INTRODUCTION

International Paper Company and One Republic Insurance Company (collectively IPC) appeal the decision of the Nebraska

- 285 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

Workers' Compensation Court in which Morton Moyers was found to be permanently and totally disabled as a result of an occupational disease. The court found Moyers was entitled to weekly permanent disability benefits from and after the date he stopped working, September 20, 2014, except during those periods in which he was entitled to receive temporary total disability benefits. For the reasons that follow, we affirm.

## II. PROCEDURAL BACKGROUND

On February 13, 2015, Moyers filed a petition alleging that he had sustained a personal injury to his respiratory system and lungs arising out of and in the scope and course of his employment with International Paper Company. He alleged the "incident and injury" occurred over the course of his 42 years of employment as he was "continually exposed to paper dust in his work environment which has caused chronic lung and respiratory condition." He alleged that he provided notice of the accident and injury on or about August 27, 2014, and that IPC had failed or refused to pay workers' compensation benefits to him.

IPC generally denied Moyers' allegations and affirmatively alleged that his condition was caused by an inherent condition and that any disability was the result of an independent intervening cause. IPC alleged that Moyers failed to timely file his cause of action and that he failed to give timely notice of his injury as soon as practicable.

On April 14, 2016, this matter was heard before the Nebraska Workers' Compensation Court. An award was issued on July 22, in which the court found Moyers sustained his burden to prove that he sustained an occupational disease arising out of his employment. The court found that Moyers became temporarily totally disabled on September 20, 2014, the date he stopped working at International Paper Company, and that he reached maximum medical improvement on June 29, 2015.

The court found that Moyers was entitled to vocational rehabilitation services and stated that "[a]fter vocational rehabilitation services have been provided to [Moyers] as a result

- 286 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

of the injuries incurred on September 20, 2014, a further hearing may be had on the extent of [his] permanent partial disability measured as a loss of earning power." The court found Moyers was entitled to certain medical expenses, but denied Moyers' requests for future medical expenses, waiting-time penalties, attorney fees, and interest.

Moyers' motion for a determination of loss of earning capacity was filed on October 11, 2016. The vocational consultant, Ted Stricklett, provided his opinion that Moyers was unable to participate in a vocational rehabilitation plan due to his ongoing breathing issues and that he was not a viable candidate in the open labor market. IPC filed a motion to quash Moyers' motion and a motion to compel vocational rehabilitation. The motions were heard on November 9, and an order was filed on December 2. The court found Moyers sustained a 100-percent loss of earning capacity and was "so handicapped that he [would] not be employed regularly in any well-known branch of the labor market." The court found Moyers suffered permanent total disability as a result of his occupational disease and found Moyers was entitled to the sum of $552.87 per week from and after the date of his injury except during those periods of time in which he was entitled to receive temporary total disability benefits.

## III. FACTUAL BACKGROUND

After Moyers graduated from high school in 1972, he began working for Weyerhaeuser, which was subsequently bought by International Paper Company, as a "sheet catcher." He became a "checker" in 1974 and was responsible for placing the "scores and knives" in the machines. He left the company for a short period from September 1975 to May 1976 before returning to Weyerhaeuser.

He worked for Weyerhaeuser from 1976 into the 2000's, when Weyerhaeuser was purchased by International Paper Company. He worked from 2008 to 2009 as a baler and became an assistant checker in 2009. Moyers' last day of work for International Paper Company was September 19, 2014.

- 287 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

Moyers first sought treatment at an emergency room for a respiratory condition in 1997. He reported a 2-month history of cough, a shortness of breath with exertion, and a 2-year history of nasal congestion. He had been treated for seasonal allergies and was taking prednisone and other medications for treatment of allergies and asthma.

Moyers sought treatment in May 2000 for allergic rhinitis. Moyers reported that the use of nasal spray, seasonally, relieved his symptoms. He sought medical treatment regularly from 2002 to 2006 for various respiratory, sinus, and bronchial complaints. He was treated for pneumonia in 2005.

Moyers treated with Dr. Thomas Nilsson at an allergy and asthma clinic from 2008 to 2011. In March 2010, Moyers saw Nilsson for shortness of breath and chest tightness which occurred even though he was using an inhaler. He expressed concerns of possible mold in his workplace and wondered if exposure to conditions in his workplace aggravated his breathing. Nilsson stated that Moyers' mold allergies were probably not related to any of the symptoms he had. In 2011, Nilsson noted Moyers had a history of asthma, allergic rhinitis, and chronic anxiety.

Moyers began treating with a pulmonologist, Dr. George Thommi, in 2013 and reported having breathing problems since 1997. He reported recurrent bouts of allergy symptoms and bronchitis that were usually worse in the spring and fall. Pulmonary function tests showed "moderate obstructive lung disease and normal diffusion."

In June 2014, Moyers reported shortness of breath, wheezing, and "coughing up brown sputum." In July 2014, Moyers reported that he worked in a cardboard factory and that the temperatures in the building sometimes reached 140 degrees. Thommi noted that Moyers was exposed to "high temperatures and dust fumes at work" and opined that Moyers' "work environment would aggravate his underlying pulmonary disease with recurrence of [his] bronchitis/pneumonia." In August 2014, Thommi noted that Moyers improved significantly and

- 288 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

was breathing very well after 2 weeks off of work, but his condition deteriorated after returning to the job. Moyers reported that after his return to work, his symptoms worsened to the point that he thought he needed to go to the emergency room. Thommi "recommended strongly that he not go to work in that current environment" and stated that "[c]ontinued exposure to this environment will cause end-stage respiratory failure." Moyers did not return to work after September 19, 2014.

In January 2015, Moyers continued to report shortness of breath, wheezing, cold symptoms, cough, shakiness, and fatigue. In a functional assessment dated April 8, 2015, Thommi diagnosed Moyers with asthma, occupational lung disease recurrent, chronic upper respiratory infection, and bronchitis. In the workers' compensation medical report prepared by Thommi, he diagnosed Moyers with obstructive lung disease/asthma, nocturnal hypoxemia, occupational lung disease, and hypersomnia and stated that Moyers' condition was "caused, significantly contributed to, or aggravated by an accident or injury arising out of or in the scope of [his] employment."

On September 29, 2015, Moyers was examined by Dr. D.M. Gammel, at IPC's request, and Gammel also reviewed Moyers' medical records. Gammel diagnosed Moyers with progressive obstructive lung disease/asthma, anxiety, depression, and sleep apnea syndrome. Gammel stated his opinion that Moyers' diagnoses were related to preexisting health conditions. Gammel stated that there was no objective evidence to suggest the workplace environment was the cause of Moyers' current condition or no objective evidence of an allergy to any irritant, chemical, or mold in his workplace. Gammel stated that the "dust may cause a respiratory irritant to temporarily exacerbate the pre-existing respiratory condition but not be the cause of the condition." Gammel stated, "Although there is evidence that wood dust exposure can cause respiratory effects to include hypersensitivity pneumonitis and occupational asthma, there are other exposures that . . . Moyers had that can cause the conditions as well . . . ."

- 289 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

## IV. ASSIGNMENTS OF ERROR

IPC asserts the court erred in admitting and excluding certain exhibits, determining Moyers' injury was an occupational disease rather than a repetitive trauma accident, finding Moyers met the burden of proving that he suffered an occupational disease, overruling IPC's motion to quash and motion to compel vocational rehabilitation, and finding Moyers to be permanently and totally disabled.

## V. STANDARD OF REVIEW

[1] Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal absent an abuse of discretion. *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016).

[2] Pursuant to Neb. Rev. Stat. § 48-185 (Cum. Supp. 2016), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Greenwood v. J.J. Hooligan's*, 297 Neb. 435, 899 N.W.2d 905 (2017).

[3] Determinations by a trial judge of the Workers' Compensation Court will not be disturbed on appeal unless they are contrary to law or depend on findings of fact which are clearly wrong in light of the evidence. *Id.*

[4] When testing the sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Nichols v. Fairway Bldg. Prods.*, 294 Neb. 657, 884 N.W.2d 124 (2016).

- 290 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

## VI. ANALYSIS

### 1. Jurisdiction

[5] For an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment. *Jacobitz v. Aurora Co-op*, 287 Neb. 97, 841 N.W.2d 377 (2013). Moyers asserts that the July 22, 2016, award was a final order and that IPC failed to appeal the order within 30 days of the judgment. Thus, he argues, this court is without jurisdiction to consider any of the issues adjudicated in the July 22 order. IPC asserts the July 22 order was an interlocutory order, as it "left open" the question of Moyers' entitlement to permanent disability benefits, to be determined after he underwent vocational rehabilitation services. Brief for appellant at 22.

[6-9] Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), an appellate court may review three types of final orders: (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, and (3) an order that affects a substantial right made on summary application in an action after a judgment is rendered. *Jacobitz v. Aurora Co-op, supra.* A party can appeal an order from the Workers' Compensation Court if it affects the party's substantial right. *Id.* Substantial rights under § 25-1902 include those legal rights that a party is entitled to enforce or defend. *Jacobitz v. Aurora Co-op, supra*. A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken. *Id.*

[10] The Nebraska Supreme Court has held, even in workers' compensation cases, that when multiple issues are presented to a trial court for simultaneous disposition in the same proceeding and the court decides some of the issues, while reserving other issues for later determination, the court's determination of fewer than all the issues is an interlocutory order and is not a final order for the purpose of an appeal. *Id.* In cases where

- 291 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

the employer's defense is that the claimant failed to prove a work-related injury, the Nebraska Supreme Court has held that an appeal is interlocutory when the trial court has reserved issues for later determination. See *id.*

[11] In *Jacobitz v. Aurora Co-op, supra*, the court found that the employer did not appeal from a final order because the trial court determined only that the claimant's accident occurred in the scope of his employment, but had not yet determined benefits. The Nebraska Supreme Court specifically stated, "From the date of this decision, a Workers' Compensation Court's finding of a compensable injury or its rejection of an affirmative defense without a determination of benefits is not an order that affects an employer's substantial right in a special proceeding." *Id.* at 104, 841 N.W.2d at 383.

In light of the *Jacobitz v. Aurora Co-op* opinion, we find the July 22, 2016, award regarding Moyers was not a final determination of benefits, as the court reserved the issue of "permanent partial disability [benefits] measured as a loss of earning power" until after vocational services had been provided. In the December 2, 2016, order, the court found Moyers was permanently and totally disabled and was entitled to benefits. At that point, there were no further issues to be adjudicated. We find IPC timely appealed from a final order, and this court has jurisdiction to address IPC's assignments of error on appeal.

## 2. ADMISSION OF EVIDENCE

### (a) Exhibits 2 through 4 and 6

At the April 14, 2016, hearing, Moyers offered exhibits 1 through 14. IPC objected to several exhibits on the basis of foundation, hearsay, and relevance, arguing there is insufficient evidence relied upon by the treating physicians to render the opinions they did. The court overruled IPC's objections in the July 22 award without providing explicit reasoning for the rulings. On appeal, IPC asserts the court erred in receiving exhibits 2 through 4 and 6. Exhibit 2 contains the records

- 292 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

and notes from Moyers' medical visits with Thommi. Exhibit 3 is the workers' compensation medical report prepared by Thommi. Exhibit 4 is the functional assessment form prepared by Thommi, and exhibit 6 contains additional notes from Thommi's office from a visit with Moyers in 2014. Each of the exhibits are personally or electronically signed by Thommi.

IPC asserts Thommi's opinion "lacks foundation," as he does not provide a factual basis for his opinion. Brief for appellant at 37. IPC argues that Thommi refers to Moyers' exposure to "high temperatures and dust fumes at work" in the "Impression and Plan" section of the report, even though Moyers alleged that he was exposed to paper dust and not dust fumes. IPC also argues that Thommi did not provide an opinion regarding the causal relationship between Moyers' condition and his exposure to paper dust or dust fumes and that, rather, Thommi focused his recommendations on the role of "heat in [Moyers'] work environment." *Id.*

Workers' Comp. Ct. R. of Proc. 10(A) (2011) provides:

> The Nebraska Workers' Compensation Court is not bound by the usual common law or statutory rules of evidence; and accordingly, with respect to medical evidence on hearings before a judge of said court, written reports by a physician or surgeon duly signed by him, her or them and itemized bills may, at the discretion of the court, be received in evidence in lieu of or in addition to the personal testimony of such physician or surgeon . . . .

See, also, Neb. Rev. Stat. § 48-168(1) (Reissue 2010).

[12] Subject to the limits of constitutional due process, the Legislature has granted the compensation court the power to prescribe its own rules of evidence and related procedure. *Contreras v. T.O. Haas*, 22 Neb. App. 276, 852 N.W.2d 339 (2014). See, also, *Roness v. Wal-Mart Stores*, 21 Neb. App. 211, 837 N.W.2d 118 (2013). Admission of evidence is within the discretion of the Workers' Compensation Court, whose determination in this regard will not be reversed upon appeal

- 293 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

absent an abuse of discretion. *Hynes v. Good Samaritan Hosp.*, 291 Neb. 757, 869 N.W.2d 78 (2015).

In this case, each of the challenged exhibits contain written reports, signed by Moyers' physician, Thommi. These exhibits were received at the discretion of the Workers' Compensation Court in lieu of Thommi's personal testimony. Although IPC may disagree with Thommi's substantive findings, the records are a representation of Moyers' medical history and treatment which is relevant to this case. We cannot find the court erred in receiving exhibits 2 through 4 and 6 over IPC's objections.

### (b) Exhibit 32

IPC asserts the district court erred in sustaining Moyers' objection to exhibit 32 and in not allowing it to be admitted for rebuttal purposes.

Prior to the start of trial, IPC made an oral motion for a continuance of the trial or, in the alternative, to allow exhibit 32 to be received into evidence. Exhibit 32 is an "Industrial Hygiene Exposure Assessment" dated October 24, 2008, purportedly for the facility where Moyers was employed. Counsel for IPC stated the report was received 1 week prior to trial, but after the deadline set by the court for disclosure of exhibits. Additional time was requested so the report could be reviewed and its findings analyzed. Moyers objected, stating that the case had been on file since February 2015 and IPC was on notice the case involved respiratory lung disease, that ample discovery had been conducted by the parties, and that Moyers had not worked since 2014 and would be prejudiced by another delay in the trial.

The court did not find good cause was shown as to why IPC should be entitled to a continuance. The court did not find adequate justification for IPC to not have obtained air quality testing reports of its facility until the eve of trial, given the length of time the case had been on file, especially for a report that was approximately 7 years old. The court overruled IPC's motion to continue.

- 294 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

Moyers objected to IPC's offer of exhibit 32 on the basis of hearsay, foundation, and relevance, and he argued that the exhibit was prejudicial as it was not timely disclosed pursuant to the court's pretrial orders. The objection was sustained. Offers of proof were made as to exhibit 32 on two occasions, and the exhibit was received for only that limited purpose.

IPC recognizes that the contents of exhibit 32 were disclosed after the discovery deadline and does not argue that the court erred by not admitting the exhibit as substantive factual evidence. Rather, IPC argues that the court erred by sustaining Moyers' objection to the exhibit as rebuttal evidence which could have been used to impeach him.

After each offer of proof, the court ruled that exhibit 32 should be excluded from evidence. The court reasoned that it was "very clear early on in the case that this was about a respiratory issue" and that air quality testing had been done by International Paper Company since 2005. When the case was filed in 2015, the parties were on notice of the issues involved, and pretrial orders stated that discovery was to be completed 7 days before trial. Because exhibit 32 was not disclosed to Moyers within the timeframe set by the court, it was excluded for all purposes, including rebuttal.

[13] As previously discussed, the Workers' Compensation Court is not bound by the usual common-law or statutory rules of evidence; it has discretion to admit evidence, and its decision to admit or exclude evidence will not be reversed on appeal absent an abuse of discretion. *Jurgens v. Irwin Indus. Tool Co.*, 20 Neb. App. 488, 825 N.W.2d 820 (2013). Upon our review, we cannot find the court abused its discretion in excluding exhibit 32 for rebuttal purposes.

### 3. Occupational Disease or Repetitive Trauma

In his petition, Moyers alleged that he sustained injury as a result of an "incident and injury" that "occurred over the course of his 42 years of continuous employment" with International

- 295 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

Paper Company. He asserted that being "continually exposed to paper dust in his work environment . . . caused a chronic lung and respiratory condition." The July 22, 2016, award contains the court's conclusion that Moyers established, by a preponderance of the evidence, that he sustained an "aggravation to a pre-existing condition through his long-term exposure to paper dust/airborne contaminants arising out of and in the course of his employment with [IPC] resulting in an occupational disease."

IPC asserts the court erred in analyzing Moyers' injury as an occupational disease rather than a repetitive trauma accident.

[14] Neb. Rev. Stat. § 48-101 (Reissue 2010) provides:

When personal injury is caused to an employee by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation therefor from his or her employer if the employee was not willfully negligent at the time of receiving such injury.

Occupational disease is defined to mean "only a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process, or employment and excludes all ordinary diseases of life to which the general public is exposed." Neb. Rev. Stat. § 48-151(3) (Reissue 2010). Occupational disease cases typically show a ""'"long history of exposure without actual disability, culminating in the enforced cessation of work on a definite date." . . .'" *Ludwick v. Triwest Healthcare Alliance*, 267 Neb. 887, 896, 678 N.W.2d 517, 524 (2004). Here, the court found the "continuous exposure to paper dust" was peculiar to Moyers' work and was not something the general public would have been exposed to.

IPC argues that "[Moyers'] exposure to dust was neither characteristic of nor peculiar to his employment," so it cannot be said that he suffered an occupational disease. Brief for appellant at 25. IPC also argues that "[t]here is no evidence in the record supporting a finding that [Moyers] was exposed

- 296 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

to 'paper dust' during the course of his employment." *Id.* IPC appears to draw a distinction between "dust" and "paper dust" in Moyers' testimony where there does not appear to be any difference. Moyers uses both terms interchangeably.

Moyers testified that he was exposed to paper dust throughout his employment at Weyerhaeuser, which was subsequently bought by International Paper Company. He testified that one task that he regularly performed was to use a hose to blow paper dust off of the machines, which then sent the dust into the air. He specifically stated that in "[c]ertain departments of the machine there would be — you would have to do the starch and take all the starch off the machine, grease, just a lot of paper dust mostly . . . ." He stated that after the dust was blown off of the machines, it was swept up and deposited into 55-gallon drums. He testified that when cardboard boxes are being cut, it creates dust, and that vacuum bags were attached to the machines to catch the dust created by the machines. He testified that there were periods of days, months, or even years when the vacuum bags were removed to make the machines more productive. When the machines were operated without the bags, the dust was released into the air. In his deposition, Moyers stated that at times, an individual in his work environment could "[h]old [their] hand out and watch the paper dust fall on [their] hand." Moyers generally did not wear a mask during his shift, except when he was cleaning, because the facility was hot and the mask made it difficult to breathe.

An employee of International Paper Company testified that he worked there for 12 years and has been a supervisor for 10 years. For the 5 or 6 years prior to trial, he was in control of the vacuum bags. He made sure that the bags were on the machines for those years "for dust purposes." He testified that from the time he began working at International Paper Company to the time he was placed in control of the vacuum bags, the bags were off of the vacuums at times for "production purposes, getting the machines to run better." He testified that

- 297 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

he was not sure if the bags were on the machines 100 percent of the time when he was not in control of their use. He stated that the bags are there to catch the dust and that if they are not in place, the dust "goes on the floor."

IPC argues Moyers' claims should have been analyzed in the context of a repetitive trauma, rather than an occupational disease. IPC refers to *Risor v. Nebraska Boiler*, 277 Neb. 679, 765 N.W.2d 170 (2009), in which the Nebraska Supreme Court determined that noise exposure is caused by repetitive external trauma, produced in the work environment. The court found that noise-related hearing loss is not properly classified as an occupational disease because exposure to loud noises does not create a hazard that distinguished the plaintiff's exposure from a myriad of other occupations. In *Risor v. Nebraska Boiler*, the court found that occupational hearing loss does not result from exposure to a "workplace substance." 277 Neb. at 695, 765 N.W.2d at 185.

The Supreme Court has declined to analyze repetitive trauma cases in the context of occupational disease. In reaching its decision in *Risor v. Nebraska Boiler*, the Nebraska Supreme Court compared the plaintiff's condition to a "substance exposure" case, in which the Nebraska Supreme Court found the plaintiff's employment exposed him to unusual amounts of wheat dust, which the court found to be peculiar to and characteristic of grain elevator operations. 277 Neb. at 689, 765 N.W.2d at 181. See *Riggs v. Gooch Milling & Elevator Co.*, 173 Neb. 70, 112 N.W.2d 531 (1961). The Supreme Court has considered exposure to other workplace substances that resulted in occupational diseases, including exposure to latex, silica, asbestos particles, dishwashing detergents, and cleansing chemicals. *Risor v. Nebraska Boiler, supra*.

In this case, the Workers' Compensation Court likened Moyers' condition to that of the plaintiff in *Riggs v. Gooch Milling & Elevator Co., supra*, in determining that Moyers had suffered an occupational disease. Upon our review, we find this case is most similar to *Riggs v. Gooch Milling &*

- 298 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

*Elevator Co.,* as there is evidence that Moyers was exposed to a workplace substance, namely an unusual amount of paper dust which would be peculiar to and characteristic of paper or cardboard manufacturing operations. Upon our review, we cannot find the court erred in analyzing Moyers' condition as a potential occupational disease, rather than a repetitive trauma accident.

### 4. Burden of Proving Occupational Disease

As previously discussed, the court found that Moyers' injury was an occupational disease and that he submitted sufficient proof that his underlying condition was aggravated by his work at International Paper Company. IPC asserts the court erred in finding Moyers met the burden of proving that his exposure to "'paper dust'" in his work environment caused his respiratory and lung condition or aggravated his preexisting respiratory or lung conditions. Brief for appellant at 29. IPC argues there is no expert medical opinion establishing a causal relationship between Moyers' alleged exposure to paper dust and aggravation of his lung and respiratory condition, which would warrant the findings of the workers' compensation court.

[15] Under the Nebraska Workers' Compensation Act, an injury has occurred as the result of an occupational disease when violence has been done to the physical structure of the body and a disability has resulted. *Ludwick v. Triwest Healthcare Alliance*, 267 Neb. 887, 678 N.W.2d 517 (2004). See § 48-151(4). In other words, an occupational disease has caused an "injury," within the meaning of the act, at the point it has resulted in disability. *Ludwick v. Triwest Healthcare Alliance, supra*. See § 48-151(4). The term "injury" includes disablement from occupational disease arising out of and in the course of the employment in which the employee was engaged and which was contracted in such employment. See § 48-151(4).

- 299 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

In 1972, Moyers began work for Weyerhaeuser, which was subsequently bought by International Paper Company. Moyers testified regarding his working conditions and exposure to paper dust throughout his employment. He began experiencing nasal, throat, and lung issues in 1997 and sought treatment. There is evidence that Moyers shared his concerns regarding his working conditions with his treating physicians from the beginning of his treatment. In 1997, Moyers sought treatment at an emergency room and reported having shortness of breath, spasms, and coughing. Notes from that emergency room visit indicate that Moyers worked in the "cardboard manufacturing industry around a lot of dust, and his cough is worse there," and that his cough improved away from work. Moyers reported to Nilsson in 2008 that he was exposed to "paper dust" at work, but, at that time, could not say that his symptoms were worse in his work environment. He experienced these symptoms over a number of years until 2014, when it was recommended that he cease his employment. Moyers' pulmonologist, Thommi, opined that "[c]ontinued exposure to this environment will cause end-stage respiratory failure."

The International Paper Company supervisor testified that precautions were taken at the company in the most recent years to trap or minimize the amount of dust in the air. However, he had no specific knowledge of the safety measures taken prior to his role as supervisor or prior to his period of employment.

Moyers offered a questionnaire signed by Thommi to support his claim, in which Thommi diagnosed "obstructive lung disease/asthma," "nocturnal hypoxemia /occupational lung disease with exacerbation," and "hypersomnia." Thommi checked the box to indicate his opinion that "the diagnosed condition [was] caused, significantly contributed to, or aggravated by an accident or injury arising out of or in the scope of [Moyers'] employment." The court noted, "Although the higher courts have expressed some dissatisfaction with opinions expressed by check marks on a questionnaire, those reports are not to

- 300 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

be rejected outright but should be examined as to a lack of credibility or weight." See *Liberty v. Colonial Acres Nsg. Home*, 240 Neb. 189, 481 N.W.2d 189 (1992). Even though the Workers' Compensation Court found Thommi's opinion was lacking as to whether Moyers' work was the cause of his lung disease, the court found sufficient proof that Moyers' underlying respiratory condition was aggravated by his work at International Paper Company. The court was persuaded by the "progressive nature" of Moyers' medical condition "after returning to work following brief hiatuses therefrom when his condition had improved."

IPC offered the opinion of Gammel, who reviewed Moyers' medical records. Gammel opined that there was no objective evidence to suggest that Moyers' workplace environment was the cause of his current condition based upon a reasonable degree of medical certainty, but there is objective evidence that his condition was related to his personal and non-work-related health issues. These issues included allergies and seasonal symptoms aggravated by house dust, emotional upset, and respiratory infections. Gammel acknowledged that "dust may cause a respiratory irritant to temporarily exacerbate the pre-existing respiratory condition but not be the cause of the condition." Gammel also noted that "wood dust exposure can cause respiratory effects [which] include hypersensitivity pneumonitis and occupational asthma."

[16] The law of this state has consistently recognized that "the lighting up or acceleration of preexisting conditions by accident is compensable." *Riggs v. Gooch Milling & Elevator Co.*, 173 Neb. 70, 74, 112 N.W.2d 531, 533 (1961). The Nebraska Supreme Court has held that a workers' compensation claimant may recover when an injury, arising out of and in the course of employment, combines with a preexisting condition to produce disability, notwithstanding that in the absence of the preexisting condition no disability would have resulted. *Manchester v. Drivers Mgmt.*, 278 Neb. 776, 775 N.W.2d 179 (2009).

- 301 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

In occupational disease cases, the Nebraska Supreme Court has stated that disability results at the point when "'the injured worker is no longer able to render further service.'" *Ludwick v. Triwest Healthcare Alliance*, 267 Neb. 887, 895, 678 N.W.2d 517, 523 (2004). Here, the court considered the expert opinion of Gammel, but deferred to Thommi's opinion, noting that even though Gammel is a qualified doctor, he is not a pulmonologist or a specialist trained in the field of respiratory conditions or diseases. The court found that, when taking the evidence as a whole, Moyers' asthma and preexisting respiratory condition became an occupational disease on September 19, 2014, when Thommi strongly recommended that Moyers not return to work.

[17,18] As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016). Where the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the Workers' Compensation Court. *Hintz v. Farmers Co-op Assn.*, 297 Neb. 903, 902 N.W.2d 931 (2017).

Viewing the evidence in the light most favorable to Moyers, and giving him the benefit of every inference reasonably deducible from the evidence, we find the court was not clearly wrong in finding Moyers met his burden to prove that he sustained an occupational disease arising out of his employment.

### 5. Motion to Quash

IPC asserts the court erred in overruling IPC's motion to quash Moyers' motion for determination of loss of earning capacity and his motion to compel vocational rehabilitation.

IPC asserts the vocational rehabilitation counselor, Stricklett, ignored the medical opinions of Moyers' physician and the court's adoption of permanent restrictions, and relied only upon "[Moyers'] subjective complaints, despite the lack of any medical evidence demonstrating a change in [his] condition

- 302 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

since the adoption of the permanent restrictions." Brief for appellant at 43. IPC alleges it was prejudiced by Stricklett's decision to allow Moyers to subjectively state that he could not undergo vocational rehabilitation services without medical evidence to support his claims.

Stricklett's letter to counsel for the parties, dated September 22, 2016, stated that he met with Moyers on September 1 to review his vocational rehabilitation options. Stricklett noted that because Moyers was unable to return to International Paper Company in any capacity, his vocational rehabilitation options included a 90-day job search or a period of formal training. During the meeting, Moyers informed Stricklett that he would be unable to work part time or full time due to his severe breathing issues, which require the use of a nebulizer every 4 hours. Moyers stated that he is unable to sit in a class-room, he does not handle hot or cold environments very well, and he does not leave home but for short periods of time in case a breathing treatment is required.

Stricklett concluded with a "reasonable degree of vocational certainty" that Moyers was unable to participate in either of the vocational rehabilitation plans available to him. Stricklett stated that Moyers is not a viable candidate in the open labor market, nor is he a candidate for training due to his inability to be away from his home and his breathing treatments for extended periods of time.

The court noted that the vocational rehabilitation statutes provide that a chosen counselor "shall evaluate the employee and, if necessary, develop and implement a vocational reha-bilitation plan." Neb. Rev. Stat. § 48-162.01(3) (Reissue 2010). The statute further provides that "the specialist shall make an independent determination as to whether the proposed plan is likely to result in suitable employment for the injured employee." Id. In this case, Stricklett determined, based on the medical records and his interactions with Moyers, that the available options for a vocational rehabilitation plan would not restore Moyers to suitable employment.

- 303 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

The court considered this evidence, as well as Moyers' age, medical condition, education, and lack of transferable job skills, which all have precluded him from the only work he knows. The court observed Moyers in the courtroom and found it "extremely unlikely that any employer, even the very most beneficent employer, would offer him a position." The court found that vocational rehabilitation was not feasible under the circumstances.

Upon our review of the evidence, we cannot find the court was clearly wrong in overruling IPC's motions to quash and to compel vocational rehabilitation under the circumstances.

### 6. Determination of Permanent Total Disability

IPC asserts the court erred in finding that Moyers was permanently and totally disabled, arguing the expert medical evidence did not support the determination and there was not sufficient evidence to warrant the court's finding.

[19,20] Whether a plaintiff in a Nebraska workers' compensation case is totally disabled is a question of fact. *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016). Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work he or she was trained or accustomed to perform or in any other kind of work which a person of the employee's mentality and attainments could perform. *Id.* As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.*

IPC argues that Gammel and Thommi provided permanent restrictions which would have allowed Moyers to return to work and that the court adopted these restrictions. IPC asserts the vocational counselor did not provide a loss of earning capacity analysis nor formulate a vocational rehabilitation plan based on the permanent restrictions adopted by the court, "even though the Court specifically indicated [Moyers']

- 304 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

entitlement to permanent disability benefits was to be determined after undergoing vocational rehabilitation." Brief for appellant at 47.

The evidence shows Stricklett prepared a loss of earning capacity analysis in February 2016. In it, Stricklett stated that if consideration is given to the opinion of Thommi, Moyers is unable to lift, stand, or walk and therefore he is completely unemployable and his loss of earning capacity would be 100 percent. However, Stricklett stated, in his analysis, if consideration is given to the opinion of Gammel, Moyers' loss of earning capacity would be 0 percent, because Gammel's opinion was that Moyers' condition was not work-related. In the July 22, 2016, order, the court explicitly disagreed with Gammel's causation opinion and delayed a determination of loss of earning capacity until such time as Moyers underwent vocational rehabilitation services.

As previously discussed, the court allowed the case to proceed for a determination of loss of earning capacity, without the preparation and completion of a vocational rehabilitation plan. The court considered Stricklett's opinion that Moyers was unable to participate in a vocational rehabilitation plan due to his ongoing medical issues. The court found Moyers was an "odd lot employee, i.e. someone who [is] not altogether incapacitated for work [but] is so handicapped that he will not be employed regularly in any well-known branch of the labor market." The December 2, 2016, order noted that the court observed Moyers' "difficulty breathing firsthand and was convinced of the veracity of his complaints."

[21] The court noted that when evaluating a loss of earning capacity, it must consider the ability to procure employment generally, the ability to earn wages in one's employment, the ability to perform tasks of the work in which one is engaged, and the ability to hold a job obtained. The record shows that the court considered each of these factors, as well as the evidence of Moyers' educational background, work history, medical conditions, and vocational options, and concluded

- 305 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
MOYERS v. INTERNATIONAL PAPER CO.
Cite as 25 Neb. App. 282

that he was permanently and totally disabled. The Nebraska Supreme Court has stated that although medical restrictions or impairment ratings are relevant to a claimant's disability, the trial judge is not limited to expert testimony to determine the degree of disability, but instead may rely on the testimony of the claimant. *Tchikobava v. Albatross Express*, 293 Neb. 223, 876 N.W.2d 610 (2016). Upon our review, we find the court considered the appropriate factors and was not clearly wrong in determining that Moyers was permanently and totally disabled.

## VII. CONCLUSION

We affirm the decision of the Nebraska Workers' Compensation Court finding that Moyers is permanently and totally disabled as a result of an occupational disease and that he is entitled to benefits.

AFFIRMED.