IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


HOWELL V. TRANSIT AUTHORITY OF THE CITY OF OMAHA


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


CHANIN HOWELL, APPELLEE,

V.

TRANSIT AUTHORITY OF THE CITY OF OMAHA
DOING BUSINESS AS METRO AREA TRANSIT, APPELLANT.


Filed January 18, 2022.    No. A-21-023.


Appeal from the Workers' Compensation Court: J. MICHAEL FITZGERALD, Judge. Appeal dismissed, and cause remanded for further proceedings.

Samuel R. O'Neill, Robert M. Schartz, and Julie M. Ryan, of Abrahams, Kaslow & Cassman, L.L.P., for appellant.

Thomas D. Wulff, of Law Office of Thomas D. Wulff, P.C., for appellee.


PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

MOORE, Judge.

## I. INTRODUCTION

Chanin Howell was employed by the Transit Authority of the City of Omaha d/b/a Metro Area Transit (Metro) as a bus driver, and she suffered a work-related injury. Howell sought benefits in the compensation court, and she filed a motion to compel payment for certain medical treatment, among other things, which motion was granted by the court. Metro filed a motion to reconsider or modify that order, which was denied by the court. Metro appeals, asserting that the compensation court's orders exceeded its authority and the requests for relief in the motion to compel. Because the court's December 2020 order ruling on Howell's motion to compel was not a final order, we dismiss the appeal.

- 1 -

## II. STATEMENT OF FACTS

### 1. ACCIDENT AND INJURY

In 2009, Howell began working as a bus driver for Metro. At the time of her bus driving accident and injury in 2019, Howell was also working part-time for the Transportation Security Administration (TSA) as a security guard at the airport. On February 17, 2019, a metal bar detached from the bus Howell was driving for Metro, striking her right arm and causing injury. After her injury, Howell attempted to return to work at Metro on two occasions. She returned first in late April or early May after receiving some cortisone injections but was unable to keep working due to increased pain and issues with her grip. Her second attempted return to work for Metro was in mid to late July. After discussing her medical records with her supervisor, it was agreed that she did not have to drive a bus. At the time of the evidentiary hearing in this case, Howell testified that she had offered to undergo additional training for some other position but that no one from Metro had ever contacted her in that regard. TSA accommodated Howell's work restrictions, but she resigned from her TSA job at the end of August 2019.

### 2. PETITION AND ANSWER

On July 7, 2020, Howell filed a petition in the compensation court seeking benefits. Howell alleged a work-related accident to her right arm occurring on February 17, 2019, which resulted in her developing complex regional pain syndrome (CRPS) affecting her "neck, upper back and other areas of her body." Howell alleged that the matters in dispute were payment of past and future temporary total disability benefits; payment of permanent partial disability benefits; payment of past and future medical expenses; vocational rehabilitation; and penalties, interest and attorney fees.

In its answer, Metro admitted that Howell was employed by Metro as a bus operator on February 17, 2019, but it denied the other substantive allegations of Howell's petition. Metro affirmatively alleged that no present controversy existed between the parties because Metro had already paid, without admitting liability, all workers' compensation benefits due to Howell as if her injuries were compensable. Metro also alleged that Howell's alleged injuries did not arise out of and in the course and scope of her employment with Metro, that her alleged injuries were not causally related to her employment, and that, even if Howell had suffered a compensable injury, it did not result in any temporary or permanent disability or any loss of earning capacity. Metro sought reimbursement of the payments it had made and asked the compensation court to dismiss Howell's petition with prejudice.

### 3. HOWELL'S MOTION TO COMPEL

On August 18, 2020, Howell filed a motion to compel, asking the compensation court to compel Metro to pay for a functional capacity evaluation (FCE) and to appoint a vocational rehabilitation counselor. In her motion, Howell again alleged that she developed CRPS as a result of her work-related accident and injury. She alleged that both her treating physicians and defense medical examiners had confirmed that diagnosis. She stated that defense medical examiner Dr. Dean Wampler had opined that she had reached maximum medical improvement (MMI) and recommended an FCE to determine appropriate physical restrictions, but that the parties had been

unable to agree on a facility to conduct the FCE. Finally, because Howell did not think she could return to work as a bus driver, she asked the court to appoint a vocational rehabilitation counselor to complete a loss of earning capacity analysis and a vocational rehabilitation evaluation. Subsequently, Howell filed an amended motion to compel in which she added an assertion that she was in need of additional medical treatment as recommended by her pain management specialist, Dr. Rafal Krejza. Specifically, Howell alleged that in a recent office visit, Krejza had recommended "additional injections to help alleviate the pain and disability [Howell] is experiencing due to the work[-]related injury." In addition to her previous requests of payment for the FCE and appointment of a vocational rehabilitation counselor, Howell asked the court to enter an order "allowing [her] additional treatment as recommended by her treating physician."

4. HEARING ON MOTION TO COMPEL

The compensation court heard Howell's motion on September 4, 2020. The court received documentary exhibits offered by the parties, including various medical records and a stipulation of the parties. The parties stipulated that (1) on February 17, 2019, Howell was employed as a bus driver for Metro, (2) on that date, a metal bar became detached from the bus striking Howell's right arm causing injury but the nature and extent of the injury was at issue, (3) Metro had timely notice of the accident and injury, (4) jurisdiction and venue were proper, and (5) Metro had paid certain benefits, both medical and indemnity, for which they were entitled to credit. After receiving the parties' exhibits, the court noted that there had been "no specific finding of liability" in the case, stating that this "would make it difficult to decide some of the issues raised in the motion." However, in reference to the parties' stipulation, the court observed that "there is an admission of some liability" and that "the question now becomes what's the injury." Metro's attorney responded affirmatively to this understanding of the case expressed by the trial judge. He then advised that the parties had resolved the issue relating to the FCE raised in Howell's motion to compel. The parties' attorneys also discussed the issue of appointing a vocational rehabilitation counselor with the court, and the court determined that it would appoint a vocational rehabilitation counselor to begin work after the FCE had been performed. The court then discussed with the attorneys some of the medical treatment reflected in the medical records, noting "there's been a lot of doctors in here" and stating, "I probably ought to have some evidence on why we're changing these docs" and "about what's going on." The court then called Howell to the stand. We have summarized the medical evidence and Howell's testimony below.

(a) Medical Evidence Offered by Howell

On February 17, 2019, Howell was examined in the emergency room for pain and tingling in her right arm. The emergency room records note some numbness and tingling in the entire hand and underside of her arm. Howell was bruised and most worried about the tingling in her fingers, hand, wrist, and forearm. She was given over-the-counter pain medication and referred to Dr. Kayvon D. Izadi, an orthopedic surgeon. The following day, Howell was examined by Dr. Darin Gregory at CompChoice for "blunt trauma to her right arm." At that time, she had pain in the forearm and the trapezius areas and some decreased sensation in her third, fourth, and fifth fingers. Gregory diagnosed a right forearm contusion, ordered physical therapy, and placed her on modified work duty with no driving a commercial motor vehicle.

Howell's medical treatment from February 2019 through the time of the hearing on her motion is complex and involves numerous doctors (including orthopedic and pain management doctors) and treatments (including medication, physical therapy, and nerve block injections).

(b) Medical Evidence Offered by Metro

Metro offered a report from Wampler dated July 14, 2020. Wampler's report was based on a review of Howell's medical records, video from the February 2019 bus accident and injury, and his own recent physical examination of Howell. Wampler outlined the course of Howell's medical treatment before setting forth the conclusions of his review.

Initially, Wampler expressed that "Howell's history of symptoms and treatment following an injury in February [2019] did not have a good physician to direct her care to specialists." He stated further that her symptoms "morphed into an extensive complex of symptoms that cannot have causal connection to the original event." Wampler noted Izadi's diagnosis of "forearm contusion with radial neuritis," and Wampler opined, "It is my opinion within a reasonable degree of medical certainty this was the only correct diagnosis for [Howell's] injury." Wampler then recounted further details of Howell's medical treatment, including his examination of her on May 11, 2020. He noted that Dr. Jeremy K. Gallant (a physiatrist who first saw Howell on April 9, 2019) had already performed medial branch blocks for neck pain by then that had allowed improvement, but Wampler opined that Howell's neck pain, "perpetuating over many months," was a condition "caused only by the expected advancement of underlying cervical degenerative disease, rather than the incident on the bus."

In sum, Wampler concluded that Howell sustained "only a right forearm contusion and possible radial nerve inflammation that resolved." Wampler stated that Howell's claim "took on a life of its own" when Izadi suggested physiatry referral "for what he recognized as a pre-existing condition." He opined, "Izadi's focus on right wrist symptoms that were found to be caused by a pre-existing degenerative condition could not have been aggravated by the impact." Wampler observed that Howell complained about neck, shoulder, and arm symptoms "that were probably related to her cervical disk disease and facet arthropathy, but also could not have been aggravated by the mechanism of injury." He noted, "[t]here was no traction to the upper arm [during the accident], just impact between the bar and the armrest of her bus seat." Finally, Wampler opined that Howell had reached MMI at the time of his examination of her on May 11, 2020. Because there had been difficulty at that time with Howell agreeing to an FCE, Wampler also concluded that Howell "can be released to return to work without restrictions" and "has 0% impairment."

(c) Howell's Testimony

In response to questioning by the parties' attorneys and the trial judge, Howell testified about her accident, medical treatment, efforts to return to work, and current symptoms in her right upper extremity. At the time of her testimony, Howell had cramping in her palm, diminished mobility, shooting pain in her arm, and throbbing pain from her forearm to her wrist. She stated that she was unable to "grip, pull, and turn." Howell was also experiencing and still had limited neck mobility. She testified that neck movement caused shooting pain in her head and migraine flare ups. According to Howell, she had never had migraines or right arm pain prior to the February 2019 accident. About 5 or 6 years previously, Howell was injured in an accident and received

physical therapy, which included neck massage. Howell testified that her symptoms from that accident resolved prior to the 2019 accident. Howell testified that her current symptoms affect her daily activities and that she is not currently able to drive a bus safely or without pain. She asked the compensation court to allow her to continue treatment with Krejza and to have Metro pay for it.

### 5. RULING ON MOTION TO COMPEL

On December 9, 2020, the compensation court entered an order, ruling on Howell's amended motion to compel. After setting forth a lengthy recitation of the medical evidence received at the hearing on Howell's motion, the court stated that Howell was a credible witness, that it believed her, and that "her complaints of pain are real." The court found that Howell injured her neck, right arm, right wrist, and right hand in an accident arising out of her employment with Metro on February 17, 2019. The court noted that the record showed that Rakes, Dr. M. Andrew Thompson (an orthopedic doctor Howell saw for a second opinion,) and Krejza "state [Howell] has [CRPS]." The court noted Gallant's opinion that Howell did not meet "strict criteria" for CRPS but that she did have "abnormal peripheral nerve issues." The court then found that Howell has CRPS, stating that it was disregarding Wampler's opinion to the contrary. Next, the court found that Howell had not yet reached MMI "because it appears the only remaining treatment is ketamine injections ordered by . . . Krejza," after which it "appears there is nothing more that can be done to relieve [Howell's] pain." The court stated that Howell would "most likely" have reached MMI at that point, and it ordered Metro to pay for the ketamine injections. The court also ordered Metro to pay temporary total benefits to Howell from the point it had previously stopped such payments until when she reached MMI, and it ordered Metro to pay for Howell's future medical care "all as required by [Neb. Rev. Stat.] § 48-120 [(Cum. Supp. 2020)], including but not limited to, the ketamine injections." Finally, the court granted Howell's request for appointment of a vocational rehabilitation counselor.

### 6. MOTION TO RECONSIDER OR MODIFY, RULING, AND APPEAL

On December 21, 2020, Metro filed a motion, asking the compensation court to reconsider or modify its December 9 order, in which Metro alleged the court had made "explicit and implicit factual findings regarding [Howell's] medical condition and treatment that should be resolved at trial and not as part of [Howell's] [m]otion." Metro alleged that no evidence admitted at the hearing on Howell's motion contained "the requisite proof from which to properly infer that any diagnosis of [CRPS] is sufficiently causally linked to [Howell's] work-related injury." Metro noted that Howell's motion was filed and heard before the parties completed discovery, and it asked the court not to make factual findings based on the evidence presented at the September hearing and instead to set a trial date.

The compensation court heard Metro's motion to reconsider or modify on December 22, 2020. At the hearing, Metro's attorney noted that Howell's amended motion to compel had asked the court to (1) order for Metro to pay for an FCE, (2) appoint a vocational rehabilitation counselor, and (3) order Metro to pay for ketamine injections. The attorney stated that since the FCE request was resolved prior to the hearing, he left the hearing expecting an order regarding the vocational rehabilitation request and whether Howell was entitled to the requested ketamine injection

treatment. He argued that the court's order "went above and beyond that" and addressed matters that should have been reserved for a trial. Metro's attorney argued that because the parties had not stipulated as to the nature and extent of Howell's injury, the court was not able to award future medical expenses at that time. He also argued that issues regarding future medical expenses (other than the ketamine injections), the date of MMI, and temporary total disability benefits had not been raised in Howell's motion and needed to be addressed at trial after the completion of discovery. Finally, he argued that even if a pretrial award of future medical expenses was proper, "Howell still failed to meet the burden of showing that there's a causal connection between her [CRPS] and the work accident."

During the hearing on Metro's motion, the compensation court characterized the September 2020 hearing on Howell's motion as "a trial on a motion." Metro's attorney disagreed with this characterization, arguing that "if we're going to be having a trial, we need to be able to complete discovery. It's a due process point." He noted that Howell's amended motion was filed only about 2 months after Howell's petition, and he argued that Metro had been deprived of the opportunity to conduct discovery, take depositions, and prepare experts. When the court inquired whether it had to order temporary disability benefits in conjunction with ordering the medical treatment requested in Howell's motion, Metro's attorney replied negatively, suggesting that Howell could always "come back at trial and ask for those benefits." The court then discussed with Metro's attorney how the concept of MMI fit in with Howell's requests in her motion. During this discussion, Metro's attorney again noted due process concerns. The court indicated that it would have responded favorably if Metro's attorney had sought a continuance, but Metro's attorney stated that he had not done so "because it was a motion to compel."

The compensation court and Metro's attorney then discussed the timing of awarding medical benefits and determining the nature and extent of a claimant's injuries. Metro's attorney again argued that the court should not have determined "what [Howell's] injuries are" following the hearing on Howell's motion to compel and that it should have waited either until after the parties had stipulated as to the nature and extent of Howell's injuries or until after trial to do so. During this discussion, the court stated:

> In our court on a motion to compel, if there's liability then we realize whether or not the treatment is reasonable and necessary to treat the injury. That's it. We don't have to go to a trial. We don't have to go to a trial at all. . . . Why should we -- number one, I shouldn't make the plaintiff wait. Number two, I . . . wouldn't make the parties go through the time and expense and everything for something that everybody agreed upon, except whether or not this is necessary and reasonable to treat the injury. That's the only issue in the case.

The court also stated, "But . . . when they come in and they want medical care, I don't think we need to have a trial if there's liability."

During the course of additional discussion, the compensation court expressed its belief that determining whether Howell had CRPS was a necessary part of determining whether to grant Howell's request for ketamine injections to treat CRPS. Metro's attorney argued during this portion of the discussion that even if awarding medical benefits at this stage of the case was appropriate, there had not been evidence to link Howell's work injury and her CRPS. The court

disagreed, citing "the medical records as a whole" and particularly Thompson's records. At the conclusion of the hearing, the court indicated that it was going to overrule Metro's motion "and refer to what we talked about here today."

On December 22, 2020, the compensation court entered an order denying Metro's motion to reconsider or modify the December 9 order "[f]or reasons dictated to the court reporter" at the December 22 hearing.

Metro subsequently perfected its appeal to this court.

### III. ASSIGNMENTS OF ERROR

Metro asserts, consolidated and restated, that the compensation court acted without or in excess of its powers when on a pretrial motion limited to certain matters, it made certain broader explicit and implicit findings, namely, (1) implicitly finding that Howell had met her burden of proof to show that her work accident was the proximate cause of her CRPS injury, (2) finding that Howell had not yet reached MMI, (3) determining whether Howell had suffered any periods of temporary disability, and (4) finding Howell was entitled to future medical care, including ketamine injections. We note that Metro does not challenge the court's appointment of a vocational rehabilitation counselor.

### IV. STANDARD OF REVIEW

A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. *Picard v. P & C Group 1*, 306 Neb. 292, 945 N.W.2d 183 (2020). An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Melton v. City of Holdrege*, 309 Neb. 385, 960 N.W.2d 298 (2021). Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Sellers v. Reefer Systems*, 305 Neb. 868, 943 N.W.2d 275 (2020).

### V. ANALYSIS

Before reaching the legal issues presented for review, it is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties. *Loyd v. Family Dollar Stores of Neb.*, 304 Neb. 883, 937 N.W.2d 487 (2020). For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders. *Id.*

There are three types of final orders which may be reviewed on appeal, one of which is an order that affects a substantial right made during a special proceeding. *Id.* Because workers' compensation proceedings are special proceedings, the issue is whether the court's order is final. *Id.*

Under Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2020), an appellate court may review three types of final orders: (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, (3) and an order that affects a substantial right made on summary application in an action after a judgment is rendered. *Loyd v. Family Dollar Stores of Neb., supra.*

The second category is applicable here. A party can appeal an order from the Workers' Compensation Court if it affects the party's substantial right. *Moyers v. International Paper Co.*, 25 Neb. App. 282, 905 N.W.2d 87 (2017). Substantial rights under § 25-1902 include those legal rights that a party is entitled to enforce or defend. *Moyers v. International Paper Co., supra*. A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken. *Id.*

The Nebraska Supreme Court has held that, even in workers' compensation cases, when multiple issues are presented to a trial court for simultaneous disposition in the same proceeding and the court decides some of the issues, while reserving other issues for later determination, the court's determination of fewer than all the issues is an interlocutory order and is not a final order for the purpose of an appeal. *Jacobitz v. Aurora Co-op*, 287 Neb. 97, 841 N.W.2d 377 (2013). In *Jacobitz*, the claimant argued that he had not yet reached maximum medical improvement, but that the issue of whether he was injured in the scope of his employment should be tried first. The trial court granted a motion to bifurcate the trial. Following trial on the issue of liability, the court entered an order concluding that the claimant was injured in an accident arising out of and in the course of his employment. In the order, the court scheduled a subsequent telephone conference to set a trial date to determine benefits. The employer appealed from this order.

On appeal, the Nebraska Supreme Court observed that permitting employers to appeal from an adverse ruling before the Workers' Compensation Court has determined benefits is inconsistent with the Legislature's intent to provide prompt benefits to injured workers. *Id.* It also held that from the date of its decision, a Workers' Compensation Court's finding of a compensable injury or its rejection of an affirmative defense without a determination of benefits is not an order that affects an employer's substantial right in a special proceeding. *Id.* The court concluded that the employer had not appealed from a final order because the trial court had only determined that the claimant's accident occurred in the scope of his employment.

Subsequently, in *Moyers v. International Paper Co., supra*, this court considered a case in which the trial court entered an award, finding that the claimant met his burden of proving he sustained an occupational disease arising out of his employment. The court determined the dates when the claimant became temporarily totally disabled and when he reached maximum medical improvement. It also determined that the claimant was entitled to vocational rehabilitation services, but it reserved the issue of permanent partial disability benefits until after the claimant had received vocational rehabilitation services. Specifically, the court found that "[a]fter vocational rehabilitation services have been provided to [Moyers] as a result of the injuries incurred [in September 2014], a further hearing may be had on the extent of [his] permanent partial disability measured as a loss of earning power." *Moyers v. International Paper Co.*, 25 Neb. App. at 285-86, 905 N.W.2d at 91. The court also found the claimant was entitled to certain medical expenses, but denied his requests for future medical expenses, waiting-time penalties, attorney fees, and interest. Later, the claimant filed a motion, seeking determination of his loss of earning capacity, based on the vocational consultant's opinion that the claimant would be unable to participate in vocational rehabilitation; the employer filed a motion to compel vocational rehabilitation. Following a hearing on these motions, the trial court entered an order finding that the claimant had sustained a 100-percent loss of earning capacity, was entitled to permanent total

disability benefits, and determined the amount of those benefits. The employer appealed from this second order.

On appeal to this court, the claimant argued that the first order was a final appealable order and that because the employer had failed to appeal from it, this court was without jurisdiction to consider any of the issues adjudicated in the first order. The employer argued that the first order was interlocutory because it left open the question of the claimant's entitlement to permanent disability payments until after he underwent vocational rehabilitation services. In light of the Nebraska Supreme Court's determination in *Jacobitz v. Aurora Co-op*, 287 Neb. 97, 841 N.W.2d 377 (2013), we determined in *Moyers*, that the first order was not a final appealable order because the trial court reserved the issue of "'permanent partial disability [benefits] measured as a loss of earning power'" until after the provision of vocational rehabilitation services. *Moyers v. International Paper Co.*, 25 Neb. App. 282, 291, 905 N.W.2d 87, 97 (2017). We determined that once the trial court determined in the second order that the claimant was permanently and totally disabled and entitled to benefits, there were no further issues to be adjudicated. Accordingly, we found that the employer's appeal from that second order was timely and we had jurisdiction to address its assigned errors on appeal.

In the present case, the trial court determined that Howell injured her neck, right arm, right wrist, and right hand in an accident arising out of her employment with Metro. It found that Howell had not yet reached MMI and ordered Metro to pay temporary total disability benefits from the point it had previously stopped making such payments until Howell reached MMI. The court stated that once Howell reached MMI she "may be entitled to permanent benefits," and that if the parties could not agree on the amount of such benefits, either party "may apply to the Court for a further hearing." The court also determined that Howell was entitled to future medical care, including the requested ketamine injections, and ordered the appointment of a vocational rehabilitation counselor. We conclude that the court's December 2020 order ruling on Howell's motion to compel was not a final determination of benefits as the court reserved the issue of permanent benefits until after the provision of vocational rehabilitation benefits.

Because the order appealed from was not a final order, the appeal must be dismissed and we need not further address the assigned errors.

## VI. CONCLUSION

The compensation court's December 2020 order ruling on Howell's motion to compel was not a final, appealable order. Accordingly, we dismiss the appeal and remand the cause for further proceedings.

APPEAL DISMISSED, AND CAUSE REMANDED
FOR FURTHER PROCEEDINGS.